PRESENT:  All the Justices

JOSEPH A. MOSES HARRIS, JR.

v.   Record No. 080437                    OPINION BY
                                 JUSTICE S. BERNARD GOODWYN
COMMONWEALTH OF VIRGINIA               October 31, 2008

            FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether an anonymous tip,

combined with observations by a police officer, provided the

officer with the reasonable suspicion required to conduct an

investigative traffic stop in compliance with the Fourth

Amendment of the United States Constitution.

     Joseph A. Moses Harris, Jr. ("Harris") was charged with

feloniously operating a motor vehicle while intoxicated in

violation of Code § 18.2-266.  Harris filed a motion to

suppress in the Circuit Court of the City of Richmond,

claiming that the investigative stop of his car was in

violation of the Fourth Amendment.  The court denied the

motion to suppress and convicted Harris.

     Harris appealed to the Court of Appeals.  The Court of

Appeals affirmed the conviction in an unpublished opinion.

Harris v. Commonwealth, Record No. 2320-06-2 (February 5,

2008).  This Court granted Harris an appeal.

                         FACTS

     On December 31, 2005, Officer Claude M. Picard, Jr.

("Officer Picard"), of the Richmond Police Department,

received a call from a dispatcher informing him that "there was a[n] intoxicated driver in the 3400 block of Meadowbridge Road, [who] was named Joseph Harris, and he was driving [a green] Altima, headed south, towards the city, possibly towards the south side." The dispatcher also gave Officer Picard a partial license plate number of "Y8066" for the green Altima and stated that the driver was wearing a striped shirt. The dispatcher did not include any information concerning the identity of the person who had called in the information communicated in the dispatch or the time frame in which the caller had observed the car or the driver.

Officer Picard responded to the call, and shortly thereafter, saw a green Altima traveling south on Meadowbridge Road. Officer Picard began to follow the car. While following the car that Harris was driving, Officer Picard noticed that the license plate number, "YAR-8046", was similar to the one reported by the anonymous caller. Harris was driving within the posted speed limit, and Officer Picard did not observe the car swerve at any time.

While following Harris' car, Officer Picard observed the car's brake lights flash three times. The first time Harris activated the car's brake lights was when Harris "slowed down" at an intersection although he had the right of way. The second time was approximately 50 feet prior to a red traffic

light at the intersection of Meadowbridge Road and Brookland Park Boulevard, when Harris "slowed down" as he approached the red traffic light. The third time the brake lights flashed was when Harris brought the car to a complete stop for the red traffic light at the intersection of Meadowbridge Road and Brookland Park Boulevard.

When the traffic light turned green, Harris proceeded through the intersection, drove his car to the side of the road and stopped of his own accord. Officer Picard activated his emergency lights to signify the initiation of a traffic stop, and positioned his car behind Harris' already stopped car. During the traffic stop, Officer Picard detected a strong odor of alcohol on Harris' breath and noticed that his eyes were watery and his speech was slurred. Harris was charged with feloniously operating a motor vehicle while intoxicated after being previously convicted of two like offenses.

ANALYSIS

Harris claims that he was stopped by Officer Picard in violation of the Fourth Amendment and that the Court of Appeals erred in affirming the circuit court's denial of Harris' motion to suppress, which was based on that alleged violation of the Fourth Amendment. Responding, the Commonwealth asserts that the Court of Appeals properly

affirmed the circuit court's denial of Harris' motion to suppress because the anonymous tip, coupled with Officer Picard's observations, provided reasonable suspicion for Officer Picard to conduct an investigative stop.

The Fourth Amendment protects the privacy and security of individuals against arbitrary searches and seizures by governmental officials. Camara v. Municipal Court, 387 U.S. 523, 528 (1967); Brown v. Commonwealth, 270 Va. 414, 418, 620 S.E.2d 760, 762 (2005). Although limited in purpose and length of detention, an investigative traffic stop constitutes a seizure within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979); Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004). An investigative stop must be justified by a reasonable suspicion, based upon specific and articulable facts, that criminal activity is "afoot." United States v. Sokolow, 490 U.S. 1, 7 (1989); McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 516 (2008); Jackson, 267 Va. at 672, 594 S.E.2d at 598; see Terry v. Ohio, 392 U.S. 1, 30 (1968). Further, pursuant to the "the fruit of the poisonous tree" doctrine, evidence seized as a result of an illegal stop is inadmissible against the defendant at trial. Jackson, 267 Va. at 672, 594 S.E.2d at 598; see Wong Sun v. United States, 371 U.S. 471, 484-85 (1963).

4

A defendant's claim that he was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal. Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002); see Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002); McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001); see also Ornelas v. United States, 517 U.S. 690, 691, 699 (1996). In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment. Bolden, 263 Va. at 470, 561 S.E.2d at 704; McCain, 261 Va. at 490, 545 S.E.2d at 545; Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000). The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error. Bolden, 263 Va. at 470, 561 S.E.2d at 704; McCain, 261 Va. at 490, 545 S.E.2d at 545; Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

Harris contends that the anonymous tip and Officer Picard's observations were not sufficient to create the reasonable suspicion necessary to justify the stop of Harris' car. Whether the Fourth Amendment has been violated is a

question to be determined from all the circumstances. Samson v. California, 547 U.S. 843, 848 (2006); see Ohio v. Robinette, 519 U.S. 33, 39 (1996).

Whether an officer has reasonable suspicion for a Terry stop is based on an assessment of the totality of the circumstances, which includes " 'the content of information possessed by police and its degree of reliability.' " Jackson, 267 Va. at 673, 594 S.E.2d at 598-99 (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). When the factual basis for probable cause or reasonable suspicion is provided by an anonymous informant, the informant's veracity or reliability, and the basis of his or her knowledge are "highly relevant" factors in the overall totality of the circumstances analysis. Illinois v. Gates, 462 U.S. 213, 230 (1983); see White, 496 U.S. at 328-31.

The analysis regarding the use of an anonymous tip to provide reasonable suspicion for an investigative stop was clarified by this Court in Jackson, in which we relied upon the United States Supreme Court's Fourth Amendment jurisprudence in Florida v. J.L., 529 U.S. 266 (2000), and White, 496 U.S. at 328-31. See Jackson, 267 Va. at 674-75, 594 S.E.2d at 599-600. An anonymous tip has a relatively low degree of reliability, requiring more information to sufficiently corroborate the information contained in the tip.

6

See J.L., 529 U.S. at 270; Jackson, 267 Va. at 673, 594 S.E.2d at 599. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " J.L., 529 U.S. at 270 (quoting White, 496 U.S. at 329) (citation omitted).

The indicia of reliability of an anonymous tip may be bolstered when the tipster provides predictive information, which the police can use to test the tipster's basis of knowledge and credibility. Jackson, 267 Va. at 676, 594 S.E.2d at 600. However, for such predictive information to bolster the tipster's basis of knowledge or credibility, the information must relate to the alleged criminal activity. Providing information observable or available to anyone is not predictive information and can only "help the police correctly identify the person whom the tipster [meant] to accuse." J.L., 529 U.S. at 272. An anonymous call that provides no predictive information leaves the police without a means to test the tipster's knowledge or credibility. J.L., 529 U.S. at 271.

In this case, the anonymous tip included the following information: Joseph Harris, described as wearing a striped shirt, was intoxicated and driving a green Altima with a

7

partial license plate number of "Y8066," southward in the 3400 block of Meadowbridge Road.  The informant in this case was not known to the police nor did he or she personally appear before a police officer.  Thus, the informant was not subjecting himself or herself to possible arrest if the information provided to the dispatcher proved false.  See Code § 18.2-461.  In other words, the informant was not placing his or her credibility at risk and could "lie with impunity." J.L., 529 U.S. at 275 (Kennedy, J., concurring).  The informant provided information available to any observer, whether a concerned citizen, prankster, or someone with a grudge against Harris.  See Jackson, 267 Va. at 679, 594 S.E.2d at 602.  The tip received by Officer Picard failed to include predictions about Harris' future behavior.  Thus, the anonymous tip, in this case, lacked sufficient information to demonstrate the informant's credibility and basis of knowledge. Such an anonymous tip cannot, of itself, establish the requisite quantum of suspicion for an investigative stop.

An anonymous tip need not include predictive information when an informant reports readily observable criminal actions. See Jackson, 267 Va. at 680, 594 S.E.2d at 603.  However, the crime of driving while intoxicated is not readily observable unless the suspected driver operates his or her vehicle in some fashion objectively indicating that the driver is

8

intoxicated; such conduct must be observed before an investigatory stop is justified.

This Court, in Jackson, held that an investigative stop violated the Fourth Amendment because the tip lacked indicia of reliability and the officer's observations did not reveal any suspicious behavior.  267 Va. at 677-78, 681, 594 S.E.2d at 601, 603.  This case is analogous to Jackson in that under the totality of the circumstances presented here, the anonymous tip lacked sufficient indicia of reliability to justify an investigatory stop, absent observations indicating criminal conduct.  Thus, the resolution of this case is dependent upon whether Officer Picard's observations, when considered together with the anonymous tip, were sufficient to establish a reasonable suspicion that criminal activity was afoot.

In testifying during the motion to suppress about Harris' driving behavior, Officer Picard did not describe Harris' driving as erratic.  Furthermore, an officer's subjective characterization of observed conduct is not relevant to a court's analysis concerning whether there is a reasonable suspicion because the Court's review of whether there was reasonable suspicion involves application of an objective rather than a subjective standard.  Terry, 392 U.S. at 21-22; Bass, 259 Va. at 475, 525 S.E.2d at 923-24; Ewell v.

Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 722 (1997); Zimmerman v. Commonwealth, 234 Va. 609, 611-12, 363 S.E.2d 708, 709 (1988); Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982).  Importantly, Officer Picard's testimony, describing what he actually observed at the time, does not indicate that Harris' driving behavior was erratic.

Officer Picard, while following Harris' car, observed that Harris was driving within the speed limit.  Harris' car did not swerve.  Officer Picard testified that Harris "slowed down" at an intersection where Harris had the right of way and that Harris "slowed down" 50 feet before he got to a red traffic light, at which Harris stopped properly.  After the traffic light turned green, Harris proceeded through the intersection, drove to the side of the road, and stopped of his own accord.  Thereafter, Officer Picard initiated the investigative stop.

An officer may briefly detain an individual for questioning if the officer has a reasonable suspicion, based on particularized and objective facts, that the individual is involved in criminal activity.  Zimmerman, 234 Va. at 611, 363 S.E.2d at 709.  To establish reasonable suspicion, an officer is required to articulate more than an unparticularized suspicion or "hunch" that criminal activity is afoot.  McCain, 275 Va. at 552, 659 S.E.2d at 516.  Lawful conduct that the

10

officer may subjectively view as unusual is insufficient to generate a reasonable suspicion that the individual is involved in criminal activity.  Harris v. Commonwealth, 262 Va. 407, 416-17, 551 S.E.2d 606, 611 (2001); Ewell, 254 Va. at 217, 491 S.E.2d at 722-23; Barrett v. Commonwealth, 250 Va. 243, 248, 462 S.E.2d 109, 112 (1995); Zimmerman, 234 Va. at 612, 363 S.E.2d at 709-10.

When viewed in the context of the anonymous tip, Harris' act of slowing his car at an intersection, or of slowing before stopping at a red traffic signal, did not indicate that he was involved in the criminal act of operating a motor vehicle under the influence of alcohol.  Driving to the side of the road and stopping may be subjectively viewed as unusual, but that conduct was insufficient to corroborate the criminal activity alleged in the anonymous tip.  See Barrett, 250 Va. at 248, 462 S.E.2d at 112.  Therefore, we hold that Officer Picard's observations, when considered together with the anonymous tip, were not sufficient to create a reasonable suspicion of criminal activity, and that, therefore, Harris was stopped in violation of his rights under the Fourth Amendment.  Thus, the circuit court erred in denying Harris' motion to suppress.

Accordingly, we will reverse the judgment of the Court of Appeals affirming Harris' conviction, vacate Harris' conviction, and dismiss the indictment against him.

<u>Reversed, vacated, and dismissed.</u>

JUSTICE KINSER, with whom JUSTICE LEMONS and JUSTICE MILLETTE join, dissenting.

The majority decides today that an investigative traffic stop by a police officer acting on an anonymous tip corroborated by the officer's own observation of the defendant's driving behavior violated the defendant's Fourth Amendment rights.  In my view, the majority fails to understand that the anonymous tip in this case, if reliable, provided the requisite reasonable, articulable suspicion to justify the minimally intrusive traffic stop.  So the question is whether, under the totality of the circumstances, the anonymous tip, as corroborated, exhibited sufficient indicia of reliability.  I answer the question affirmatively and therefore conclude the police officer had a reasonable, articulable suspicion that the defendant was engaged in criminal conduct.

An investigative traffic stop, such as the one at issue, does not violate the Fourth Amendment "so long as the officer has reasonable, articulable suspicion that criminal activity may be afoot."  <u>McCain v. Commonwealth</u>, 275 Va. 546, 552, 659

12

S.E.2d 512, 516 (2008) (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)).  As this Court has previously explained, "[r]easonable suspicion is something 'more than an "inchoate and unparticularized suspicion or 'hunch' " of criminal activity.' "  Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 598 (2004) (quoting Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968))).  "However, it is something less than probable cause."  Id. (citing Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923 (2000)).  In Alabama v. White, 496 U.S. 325, 330 (1990), the Supreme Court of the United States explained that

> [r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

"[T]here are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.' "  Florida v. J.L., 529 U.S. 266, 270 (2000) (quoting White, 496 U.S. at 327).  The constitutionality of the investigative traffic stop at issue in this case thus turns on whether the anonymous tip,

13

corroborated by the police officer's personal observations of the defendant's driving behavior, exhibited sufficient indicia of reliability to provide reasonable, articulable suspicion to effect the traffic stop. In making that determination, we must consider the "totality of the circumstances – the whole picture," United States v. Cortez, 449 U.S. 411, 417 (1981), which includes "the content of information possessed by police and its degree of reliability," i.e. "quantity and quality." White, 496 U.S. at 330. "[U]nder the totality of the circumstances the anonymous tip, as corroborated, [must exhibit] sufficient indicia of reliability to justify the investigatory stop." Id. at 332.

There is an inverse relationship between an informant's reliability and the informant's basis of knowledge. "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Id. at 330; see also Illinois v. Gates, 462 U.S. 213, 233 (1983) ("a deficiency in one [the informant's 'veracity' or 'reliability' and his or her 'basis of knowledge'] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability"). Conversely, if a police officer's information contains strong indicia of an

14

informant's veracity, then less indicia of the informant's basis of knowledge is needed. Id.; see also State v. Rutzinski, 623 N.W.2d 516, 522 (Wis. 2001) ("if there are strong indicia of the informant's veracity, there need not necessarily be any indicia of the informant's basis of knowledge").

In the case at bar, the informant identified the defendant by name and described the shirt he was wearing. The informant further provided specific details about the type and color of the vehicle the defendant was driving, a partial license plate number, the city block in which the defendant was then driving, and the direction he was traveling. I recognize that some of this information only enabled the police officer to correctly identify the person whom the informant accused of driving while intoxicated. See J.L., 529 U.S. at 272 (an accurate description of an "observable location and appearance" merely "help[s] the police correctly identify the person whom the tipster mean[t] to accuse").

The majority, however, overlooks the significance of the informant's statement that the defendant's vehicle was traveling in the 3400 block of Meadowbridge Road and was heading south. Contrary to the majority's assertion that the informant provided no predictions about the defendant's future behavior, this information is predictive. Also, to know the

15

exact location and direction of the moving green Altima at any moment indicates that the informant personally observed the vehicle being operated by an intoxicated driver. See State v. Melanson, 665 A.2d 338, 340 (N.H. 1995) (although anonymous informant provided only "innocent" details, they nevertheless were sufficient to support the conclusion that the informant had personally observed a vehicle being operated by an intoxicated driver and thus helped to demonstrate the informant's reliability).

Furthermore, when the police officer verified the accuracy of the "innocent" details provided by the informant, he had reason to believe the informant was also accurate as to the defendant's criminal activity. "[B]ecause an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." White, 496 U.S. at 331; accord Gates, 462 U.S. at 244.

Because the majority believes (incorrectly, in my view) that the informant in this case provided no predictions about the defendant's future behavior, the majority concludes the anonymous tip "lacked sufficient information to demonstrate the informant's credibility and basis of knowledge." We explained in Jackson, however, that every anonymous tip does not have to include predictive information in order for the

16

tip to have sufficient indicia of reliability. 267 Va. at 680, 594 S.E.2d at 603. This is especially so when an informant reports observable criminal activity as opposed to concealed criminal conduct. See United States v. Wheat, 278 F.3d 722, 734 (8th Cir. 2001) ("emphasis on the predictive aspects of an anonymous tip may be less applicable to tips purporting to describe contemporaneous, readily observable criminal actions, as in the case of erratic driving witnessed by another motorist"); State v. Walshire, 634 N.W.2d 625, 627 (Iowa 2001) (distinguishing between concealed criminal activity and illegality open to the public while also noting that reasonable suspicion does not necessarily require prediction of future events).

> Unlike with clandestine crimes such as possessory offenses, including those involving drugs or guns, where corroboration of the predictive elements of a tip may be the only means of ascertaining the informant's basis of knowledge, in erratic driving cases the basis of the tipster's knowledge is likely to be apparent. Almost always, it comes from his eyewitness observations, and there is no need to verify that he possesses inside information.

Wheat, 278 F.3d at 734.

In contrast to Jackson and J.L., the police officer in this case did not immediately stop the defendant as soon as he spotted the vehicle described by the informant.[1] Rather, the

_____

[1] In Jackson, the police responded to a dispatch based on an anonymous tip reporting "three black males in a white Honda

17

police officer followed the green Altima and observed the defendant's driving, which the officer described at trial as "erratic behavior."[2]  The defendant's driving, as observed by the police officer, corroborated the informant's assertion of criminal activity and indicated that the defendant was operating his vehicle while intoxicated.

The majority, however, concludes that the defendant's driving was merely "unusual."  The defendant's driving behavior alone did not need to provide reasonable, articulable suspicion.  The appropriate question is whether it

---

. . . and one of the subjects brandished a firearm."  267 Va. at 670, 594 S.E.2d at 597.  After merely identifying the white Honda with the three black males inside, the police initiated a traffic stop that led to the discovery of a firearm in Jackson's possession.  Id. at 670-71, 594 S.E.2d at 597.

In J.L., police officers responded to an anonymous tip "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun."  529 U.S. at 268. Apart from the anonymous tip, the officers did not observe any suspicious behavior, nor did they see the firearm.  Id.  The officers nevertheless frisked the defendant and recovered a firearm from the defendant's pocket.  Id.

[2] The majority states that "during the motion to suppress[, the officer] did not describe [the defendant's] driving as erratic." The officer, however, did use the adjective "erratic" to describe the defendant's driving during the Commonwealth's case in chief.  This testimony can properly be considered by this Court on appellate review.  See Murphy v. Commonwealth, 264 Va. 568, 574, 570 S.E.2d 836, 839 (2002) (considering officer's trial testimony as dispositive in reversing trial court's denial of a motion to suppress evidence); see also Wells v. Commonwealth, 6 Va. App. 541, 548-49, 371 S.E.2d 19, 23 (1988) (holding that "an appellate court may consider trial evidence in ruling on the correctness of a denial of a pretrial motion to suppress").

18

corroborated the informant's assertion of criminal activity. While I disagree with the majority's view that the defendant's driving was merely "unusual," even if the majority's characterization is accurate, the defendant's driving behavior, nevertheless, corroborated the informant's assertion that the defendant was driving while intoxicated. Furthermore, while the case before us involves the lesser legal standard of reasonable, articulable suspicion, " 'innocent behavior' when considered in its overall context may [actually] 'provide the basis for a showing of probable cause.' " United States v. Thomas, 913 F.2d 1111, 1116 (4th Cir. 1990) (quoting Gates, 462 U.S. at 244 n.13). And, "reasonable suspicion can arise from information that is less reliable than that required to show probable cause." White, 496 U.S. at 330.

The majority also ignores the principle that, when viewing the totality of the circumstances, an officer's training and experience are proper factors for consideration in determining not only whether the less stringent test of reasonable articulable suspicion is satisfied but also whether probable cause exists. See Cost v. Commonwealth, 275 Va. 246, 251, 657 S.E.2d 505, 507 (2008) (totality of the circumstances, in determining whether an officer has sufficient probable cause, includes "a consideration of the

19

officer's knowledge, training and experience"); <u>Brown v. Commonwealth</u>, 270 Va. 414, 420, 620 S.E.2d 760, 763 (2005) ("We have considered a number of instances in which an officer's expertise and training made his observation of an item suspected to contain contraband a significant factor in the probable cause analysis."); <u>Harris v. Commonwealth</u>, 241 Va. 146, 149, 400 S.E.2d 191, 193 (1991) (in determining whether the officer has reasonable articulable suspicion, "'due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience'" (quoting <u>Terry</u>, 392 U.S. at 27)); <u>Hollis v. Commonwealth</u>, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976) (In determining whether probable cause exists, we focus on "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control."). In concluding that the defendant's driving down Meadowbridge Road corroborated the informant's assertion that the defendant was driving while intoxicated, the police officer undoubtedly drew on his training and experience in identifying intoxicated drivers. This Court must give due weight to that reasonable inference, which the officer was entitled to draw from the facts in light of his experience. See <u>Harris</u>, 241 Va. at 149, 400 S.E.2d at 193. In my view, the police officer's conclusion reflects

20

what the totality of the circumstances would mean to a reasonable police officer trained in analyzing observed driving behavior in order to determine whether there is reasonable suspicion that the driver is intoxicated.  See Hollis, 216 Va. at 877, 223 S.E.2d at 889.

Finally, we explained in Jackson that " '[i]n contrast to the report of an individual in possession of a gun, an anonymous report of an erratic or drunk driver on the highway presents a qualitatively different level of danger, and concomitantly greater urgency for prompt action.' "  267 Va. at 681, 594 S.E.2d at 603 (quoting State v. Boyea, 765 A.2d 862, 867 (Vt. 2000)); accord Rutzinski, 623 N.W.2d at 526; Walshire, 634 N.W.2d at 629.  We further stated, " '[A] drunk driver is not at all unlike a 'bomb,' and a mobile one at that.' "  Jackson, 267 Va. at 681, 594 S.E.2d at 603 (quoting Boyea, 765 A.2d at 867).  Although the majority analogizes the case before us to Jackson, it ignores this portion of the Jackson opinion and never addresses the distinction between an intoxicated driver on the highway and a person carrying a

concealed weapon in terms of the need for prompt action by the police.[3]

For these reasons, I conclude that the anonymous tip, as corroborated, exhibited sufficient indicia of reliability and provided reasonable, articulable suspicion to justify the investigative traffic stop. I therefore respectfully dissent and would affirm the judgment of the Court of Appeals of Virginia.

---

[3] On brief, the Commonwealth discusses at length the decisions from other jurisdictions holding that anonymous tips about incidents of drunk driving require less corroboration than tips concerning matters presenting less imminent danger to the public, see, e.g., People v. Wells, 136 P.3d 810 (Cal. 2006); People v. Shafer, 868 N.E.2d 359 (Ill. App. 2007), and decisions holding that anonymous tips concerning drunk driving may be sufficiently reliable to justify an investigatory stop without independent corroboration, see, e.g., Cottrell v. State, 971 So. 2d 735 (Ala. Crim. App. 2006). In light of its decision, the majority, in my view, should address the Commonwealth's argument.