PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette and Mims, JJ.,
and Russell and Lacy, S.JJ.

CURTIS WAYNE BRANHAM
                                        OPINION BY
v.  Record No. 110263       SENIOR JUSTICE CHARLES S. RUSSELL
                                  January 13, 2012
COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA

     This appeal presents questions involving the Fourth

Amendment's protections against unreasonable searches and

seizures.  It also presents a question of the sufficiency of

chain of custody evidence.

                    Facts and Proceedings

     The first two assignments of error question the circuit

court's denial of a motion to suppress the Commonwealth's

evidence on Fourth Amendment grounds.  The material facts

presented on that motion, heard in advance of trial, are

undisputed but the parties disagree as to their legal

consequences.

     Shortly after midnight on July 13, 2009, Deputy J. E.

Begley, Investigator Mac Bridgewater and Sheriff L. J. Ayers,

all of the Sheriff's Department of Amherst County, were driving

to the residence of Jesse Ford, located in a rural area of the

county,[1] to serve felony warrants on Ford for offenses involving cocaine.  Access to the Ford residence was by a driveway that also served a second residence.  The Ford residence lay about a quarter of a mile up the driveway from the public road.  The officers were in two marked police cars.  Begley drove the leading car and the other two officers were in the second car, following Begley.

Turning into the driveway that leads to the Ford residence, the officers found the driveway blocked by a green Nissan parked in the driveway about 15 feet from the public road.  Seated in the Nissan, alone, was Curtis Wayne Branham.  Begley turned his spotlight on the Nissan but neither he nor the officers in the car behind him activated any emergency equipment.  Begley walked to the Nissan and asked Branham for his driver's license. Branham handed the license to Begley who noted that Branham's hands were shaking and that he seemed unusually nervous.  Begley entered Branham's driver's license information into the electronic record system and, while waiting for results from the license check, spoke to Branham again, asking him "what was going on."  Begley had noted from the driver's license that

---

[1] A witness testified that Ford's nearest neighbor lived about a quarter of a mile away.

2

Branham's address was "about five [or] six miles" away from the place where he was parked.

Begley asked Branham if he had "anything illegal in the vehicle, such as weapons." Branham said "No." Still waiting for a response to the license check, Begley asked Branham "if he would mind stepping out of the vehicle so I could pat him down for weapons." Branham stepped out of car. Begley then asked Branham if he could search him rather than pat him down, and Branham consented to the search. At some point during this procedure, the other two officers appeared at the scene. None of the officers drew their weapons. Begley asked Branham why he was at this particular location and Branham responded that he had been "out looking for somebody up there [but] couldn't find the residence." He did not give the name or address of the person for whom he was looking.

Begley testified that during these events Branham was cooperative and never indicated any hesitation or reluctance to comply with Begley's several requests. Begley testified that these requests were made in a conversational, not a demanding or threatening, tone and that the officers' cars were parked behind the Nissan but in such a way as not to obstruct its departure if Branham had desired to leave. Begley could not recall when, during these events, he received the results of the license check but confirmed that he still had Branham's license in his

3

possession when asking permission to search him. There is no evidence that Branham ever asked for the return of his license.

While Begley and Branham were talking, a car came down the driveway and stopped ahead of the Nissan. The sole occupant was Jesse Ford, the subject of the arrest warrants the officers were there to serve. Investigator Bridgewater went to Ford's car while Begley searched Branham.

In searching Branham's person, Begley reached into his right front jeans pocket and removed a plastic baggie containing an off-white powder that appeared to Begley to be cocaine. At that point, Begley handcuffed Branham and gave him Miranda warnings. He then asked Branham if there was anything in the car. Branham said "No" and told Begley he could search the car if he wanted to. A search of the Nissan revealed two sets of digital scales in the center console. Both showed a residue of white powder that Begley, based on his experience, thought to be cocaine. The contents of the baggie taken from Branham's pocket proved, on later examination, to be cocaine.

Indicted in the Circuit Court of Amherst County for possession of cocaine with intent to distribute in violation of Code § 18.2-248, Branham moved the court to suppress the evidence on the ground that it represented the fruits of his illegal seizure in violation of his Fourth Amendment rights. The court denied the motion and, at a bench trial, found Branham

guilty. His appeal to the Court of Appeals was denied by a per curiam order and then reviewed by a three-judge panel which again denied it by an order entered on December 27, 2010. We awarded Branham an appeal.

Analysis

A. Search and Seizure

Branham contends that he was seized, within the meaning of the Fourth Amendment, as soon as Deputy Begley took his driver's license to make a record check, that Begley had no basis for a reasonable, articulable suspicion that crime was then afoot, much less probable cause to justify a warrantless arrest, and that the results of the search were therefore the fruits of an unlawful seizure. The Commonwealth concedes that Branham was seized when cocaine was discovered on his person, but contends that all the events leading up to the discovery of the cocaine were incidents of a purely consensual encounter. In any event, the Commonwealth argues, Begley had a reasonable and articulable suspicion that criminal activity was afoot based upon the time, the place, the surrounding circumstances, Branham's demeanor and his evasive answers to questions.

When reviewing a denial of a motion to suppress evidence, an appellate court considers the evidence in the light most favorable to the Commonwealth and will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from

5

that evidence.  Sidney v. Commonwealth, 280 Va. 517, 520, 702 S.E.2d 124, 126 (2010).  The defendant has the burden of showing that even when the evidence is reviewed in that light, denying the motion to suppress was reversible error.  Id. at 522, 702 S.E.2d at 127.  We review de novo the trial court's application of the law to the particular facts of the case.  Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913, (2008).

A succinct summary by the United States Court of Appeals for the Fourth Circuit is helpful:

> The Supreme Court has recognized three distinct types of police-citizen interactions: (1) arrest, which must be supported by probable cause, see Brown v. Illinois, 422 U.S. 590 (1975); (2) brief investigatory stops, which must be supported by reasonable articulable suspicion, see [Terry v. Ohio, 392 U.S. 1 (1968)]; and (3) brief encounters between police and citizens, which require no objective justification, see Florida v. Bostick, 501 U.S. 429 (1991).

United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002).

The Fourth Amendment does not require any level of suspicion to justify non-coercive questioning by officers, including a request for identification.  United States v. Drayton, 536 U.S. 194, 200-01 (2002); Montague v. Commonwealth, 278 Va. 532, 538, 684 S.E.2d 583, 587 (2009).

"A police officer may constitutionally conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  Bass v.

6

Commonwealth, 259 Va. 470, 474-75, 525 S.E.2d 921, 923 (2000) (quoting Terry, 392 U.S. at 30).  An officer may briefly detain a person in those circumstances while the officer questions him, tries to identify him and attempts to gather additional information to either dispel or confirm his suspicions.  Hayes v. Florida, 470 U.S. 811, 816 (1985).

A "reasonable suspicion" requires only "some minimal level of objective justification" for making such a stop.  I.N.S. v. Delgado, 466 U.S. 210, 217 (1984).  Whether an officer has a reasonable suspicion to justify such a detention is "based on an assessment of the totality of the circumstances."  Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008).  That assessment "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' "  United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

Applying those principles to the present case, we hold that the initial encounter between Deputy Begley and Branham was entirely consensual.  Branham was not required by law to surrender his driver's license for a record check because Code § 46.2-104, requiring the owner or operator of a motor vehicle to exhibit his driver's license to an officer for

7

identification, applies only when such a driver has received a signal to stop from a law-enforcement officer. Thus, Begley's request to see his driver's license was no more than a request, and Branham's compliance was voluntary and not coerced. The other officers did not say anything to Branham until after the cocaine was discovered, there was no display of weapons or emergency lights, Branham's car was not blocked and no threatening or coercive tone of voice was used.

Further, as the chain of events unfolded, Begley developed a reasonable, articulable suspicion that criminal activity was afoot. When he examined Branham's driver's license, he could infer that Branham was probably familiar with the sparsely populated rural area because he lived only five or six miles away. Branham was notably nervous and his hands were shaking.[2] He obviously did not live where he was found and his explanation of his presence there was most unlikely. He claimed to be lost and unable to find the residence he was looking for but did not provide the name of the person he was seeking or give the address he was trying to locate. The driveway in which he was parked led to the residence of Jesse Ford, whom the officers were seeking in order to serve felony warrants involving

---

[2] "Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Whitfield v. Commonwealth, 265 Va. 358, 362, 576 S.E.2d 463, 465 (2003).

cocaine.  From these circumstances, Begley could reasonably suspect that Branham had not parked in Ford's driveway at nearly one o'clock in the morning because he was lost.

We hold that Deputy Begley had a reasonable articulable basis for a suspicion sufficient to justify detaining Branham while he attempted to gather information to either dispel or confirm his suspicions.  His search of Branham's person and vehicle and the results of those searches were not, therefore, the fruits of an unlawful seizure in violation of the Fourth Amendment.  We agree with the Court of Appeals' holding that the circuit court correctly denied Branham's motion to suppress.

## B.  Chain of Custody

Branham also assigns error to the circuit court's ruling admitting in evidence a certificate of analysis of the cocaine pursuant to Code § 19.2-187.1.  He contends that he was denied his right of confrontation because the Commonwealth did not call as witnesses all persons who were involved in the chain of custody of the cocaine samples from the time they left the hands of Deputy Begley until they were received by the laboratory technician who analyzed them.

We review the decision of a circuit court with regard to the admission of evidence according to an abuse of discretion standard.  Herndon v. Commonwealth, 280 Va. 138, 143, 694 S.E.2d 618, 620 (2010).

9

Prior to trial, Branham filed a notice pursuant to Code § 19.2-187.1 asserting his right, if the Commonwealth intended to introduce a certificate of analysis at trial, to confront as a witness "any person performing such analysis or examination or involved in the chain of custody."

Three witnesses testified at trial to the chain of custody. Deputy Begley testified that he retained the items to be analyzed in his possession from the time he seized them until he deposited them in the evidence locker in the Sheriff's Department. Belinda Gaines, an evidence technician in the Sheriff's Department, testified that on July 16, 2009, she opened the locker, removed the items, logged them into the sheriff's computer system, packaged them and sent them by certified mail to the Virginia Department of Forensic Science regional laboratory in Roanoke. She recorded the certified mail certificate number. She testified that the only other person who possessed a key to the evidence locker was her supervisor, Captain Doss, but said that he only opened the locker when she was not working. Steven E. Hopridge, Jr., a chemical analyst with the regional laboratory in Roanoke, testified that he had received the package containing the items by certified mail at his Roanoke laboratory, that the package was intact, that the seal was unbroken, that he opened the package, analyzed the

10

contents, found them to contain cocaine, and signed the certificate of analysis offered in evidence.

Branham argues that, in addition to those witnesses, he had a right to cross-examine Captain Doss, and any postal workers who might have handled the certified mail package, to ascertain whether the contents had been subject to tampering, alteration or substitution while in transit, as well as any unknown employees of the laboratory who took the package from the mail and brought it to Hopridge for analysis.

Branham's contentions have no merit.  The Commonwealth was required to "show with reasonable certainty that there has been no alteration or substitution of the item[s]," Herndon, 280 Va. at 143, 694 S.E.2d at 620, but it was "not required to exclude every conceivable possibility of substitution, alteration, or tampering."  Pope v. Commonwealth, 234 Va. 114, 121, 360 S.E.2d 352, 357 (1987).  The Commonwealth must establish only the vital links in the chain of custody.  Other gaps in the chain go to the weight of the evidence rather than its admissibility. Aguilar v. Commonwealth, 280 Va. 322, 332-33, 699 S.E.2d 215, 220 (2010), cert. denied ___ U.S. ___, 131 S.Ct. 3089 (2011). Neither Captain Doss nor the postal workers were "vital links" in the chain of custody.  See Herndon, 280 Va. at 143, 694 S.E.2d at 620.  No contention was made at trial that Captain Doss ever had any contact with the evidence and he was not shown

to be a link in the chain.  In the absence of clear evidence to the contrary, postal workers are entitled to a presumption of regularity in the performance of their duties.  United States v. Cook, 580 F. Supp. 948, 955 (N.D. W.Va. 1983), aff'd, 782 F.2d 1037 (4th Cir. 1986).  We extend the same presumption to any unidentified employee at the laboratory in Roanoke who retrieved the package from the mail and delivered it in an intact condition to Hopridge for examination.  See O'Bannon v. Saunders, 65 Va. (24 Gratt.) 138, 142 (1873) (until the contrary is shown, there is a presumption that everyone performs his official duties) accord United States v. Chemical Found., Inc., 272 U.S. 1, 14-15 (1926).

## Conclusion

We find no error in the circuit court's ruling denying Branham's motion to suppress and we find no abuse of that court's discretion in admitting the certificate of analysis in evidence.  Accordingly, for the reasons stated, we will affirm the judgment of the Court of Appeals.

Affirmed.