COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Petty, Chafin and Senior Judge Bumgardner
Argued at Salem, Virginia


RONDA BROOKS PARRISH, S/K/A
 RHONDA BROOKS PARRISH

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0443-12-3              JUDGE RUDOLPH BUMGARDNER, III
                                                   JANUARY 29, 2013
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                            Joseph W. Milam, Jr., Judge

              J. Patterson Rogers, 3rd, for appellant.

              Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T.
              Cuccinelli, II, Attorney General, on brief), for appellee.


        Ronda Brooks Parrish appeals her convictions of possession of marijuana and two counts of

possession of cocaine.  She contends the trial court erred by denying her motion to suppress

evidence obtained during a warrantless stop by police.  Concluding the court did not err, we affirm.

        "On appeal from a trial court's denial of a motion to suppress, we must review the

evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all

reasonable inferences fairly deducible from it."  Sabo v. Commonwealth, 38 Va. App. 63, 69,

561 S.E.2d 761, 764 (2002) (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407

S.E.2d 47, 48 (1991)).  That principle requires us to "discard the evidence of the accused in

conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to

the Commonwealth and all fair inferences to be drawn therefrom."  Wright v. Commonwealth,

196 Va. 132, 137, 82 S.E.2d 603, 606 (1954).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

About 1:45 a.m. on June 11, 2011, Danville Police Sergeant Stewart Yeaman was patrolling an industrial area where a lot of break-ins and thefts of scrap metal, copper, and other items had occurred. All the businesses in the area were closed. The officer saw a pickup truck come out of the parking lot of Jarrett Welding Company. After passing the truck, the officer watched it in his rearview mirror and saw it turn into a vacant lot next to a convenience store that was also closed. The officer turned around and went back to the lot. He saw the truck parked six feet from a car parked facing into the fence. No other vehicles were in the lot. As he pulled into the lot, the defendant walked toward the car, and the truck drove off leaving by a side exit.

The officer pulled behind the car and activated his emergency lights as the defendant was unlocking the car. The officer approached the defendant, saw that she had cuts and scratches all over her arms and legs, and asked if he could help her. She was then seated in the driver's seat with the door open, but the car was not running. The defendant first said, "Oh, you scared me." The officer assured her that he was a policeman and would not hurt her. He tried to calm her down and then asked for identification. The defendant stated her name but had no identification with her. She said that her boyfriend had her identification and that he had just left. She got her cell phone and appeared to make a call but then admitted that she did not have a driver's license. From the information the defendant provided, the officer learned there was an outstanding warrant for her arrest. He then arrested the defendant. When asked if she possessed any drugs or weapons, the defendant admitted she was carrying drugs and produced a packet of cocaine. The officer also found marijuana in her purse.

The defendant asserts she was illegally seized when the officer activated his emergency lights and parked behind her vehicle. In denying the defendant's motion to suppress, the trial court concluded the officer acted properly under the community caretaker doctrine. We do not

reach the merits of whether the trial court correctly applied that doctrine[1] because we hold that the officer possessed a reasonable, articulable suspicion of criminal activity before the seizure.[2]

When an officer conducts an investigatory stop, the officer "must have 'a reasonable suspicion, based on objective facts, that the [person] is involved in criminal activity.'" Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 722 (1997) (alteration in original) (quoting Brown v. Texas, 443 U.S. 47, 51 (1979)). "Reasonable suspicion is something 'more than an inchoate and unparticularized suspicion or hunch of criminal activity.' However, it is something less than probable cause." Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 598 (2004) (quoting Illinois v. Wardlow, 528 U.S. 119, 124 (2000)). It "requires only 'some minimal level of objective justification' for making such a stop." Branham v. Commonwealth, 283 Va. 273, 280, 720 S.E.2d 74, 78 (2012) (quoting I.N.S. v. Delgado, 466 U.S. 210, 217 (1984)). "Whether an officer has a reasonable suspicion to justify such a detention is 'based on an assessment of the totality of the circumstances.'" Id. (quoting Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008)). A police officer may "'draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person.'" Id. (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

---

[1] The community caretaker doctrine permits the police to "'engage in . . . community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" Commonwealth v. Waters, 20 Va. App. 285, 289, 456 S.E.2d 527, 529 (1995) (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)).

[2] "'We do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground.'" Banks v. Commonwealth, 280 Va. 612, 617, 701 S.E.2d 437, 440 (2010) (quoting Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963)). Here, the record demonstrates that all evidence necessary to the alternative ground for affirmance was before the trial court. "The factual record is complete; the conclusion to be drawn from these facts . . . may be decided on this record." Perry v. Commonwealth, 280 Va. 572, 581, 701 S.E.2d 431, 436 (2010).

The defendant concedes that "had [she] been the driver or a passenger" in the truck, her "detention may not have been improper as a brief investigatory stop." She asserts, however, that "[t]he only association between appellant and the pickup truck suggested by the facts was geographical . . . ." At trial she conceded that the officer had "every right in the world to have gone over there without blue lights on, and . . . and to have parked beside her, and say, 'Are you okay, ma'am?'"

Although the record does not indicate the officer saw the defendant exit the truck or talk to its driver, he did see her walking from the truck to her parked car, which was the only other vehicle in the lot. A clear inference is that the defendant had just gotten out of the truck or had just talked with the driver. The defendant had an apparent connection with the truck that the officer had just seen leaving the premises of a closed business in an area that had recently experienced numerous thefts. The truck drove off as the police vehicle entered the lot leaving the defendant alone, in an empty lot, late at night, near a closed convenience store. The officer was entitled to pull in and activate his lights to announce who was approaching. Upon seeing the cuts and scratches on the defendant, the officer had a reasonable basis to speak with the defendant and investigate the situation.

"There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop." Hoye v. Commonwealth, 18 Va. App. 132, 135, 442 S.E.2d 404, 406 (1994). Indeed, as the Supreme Court stated in Wardlow, 528 U.S. at 124-25:

> In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

In making that determination, "the courts must consider 'the totality of the circumstances — the whole picture.'" Hoye, 18 Va. App. at 135, 442 S.E.2d at 406 (quoting United States v. Sokolow, 490 U.S. 1, 8 (1989)). The reasonable suspicion necessary for a Terry stop may arise from lawful conduct that assumes a suspicious appearance when viewed with "commonsense judgments and inferences about human behavior." Wardlow, 528 U.S. at 124.

Here, the officer observed the defendant and her apparent association with the truck in light of his knowledge of the time, place, and criminal activity in the area. Considering the totality of the circumstances, we conclude the defendant's conduct gave rise to a reasonable inference that she was involved in criminal activity and the officer had reasonable suspicion to conduct a Terry investigation. Accordingly, we affirm.

Affirmed.