COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Malveaux and Senior Judge Frank
Argued at Hampton, Virginia

UNPUBLISHED

CONWAY SPENCE HYMAN

v.        Record No. 0519-18-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROBERT P. FRANK
OCTOBER 22, 2019

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William R. O'Brien, Judge[1]

Matthew Alexander Cramer, Assistant Public Defender, for
appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Conway Hyman, appellant, was charged with possession with intent to distribute a

Schedule I or II controlled substance, driving while intoxicated, and driving a motor vehicle after

having a revoked license (third offense). After the trial court denied his motion to suppress

evidence, appellant entered conditional guilty pleas, preserving his right to appeal the

suppression ruling, and was convicted of the charged offenses.

BACKGROUND

Under familiar principles of appellate review, we will state "the evidence in the light

most favorable to the Commonwealth, the prevailing party in the trial court, and will accord the

Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence."

Murphy v. Commonwealth, 264 Va. 568, 570 (2002) (applying this principle in a case involving

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Steven C. Frucci presided at the hearing on the motion to suppress.

a motion to suppress evidence). So viewed, the evidence established that on June 4, 2016, Officer J.D. Curtin of the City of Virginia Beach Police Department was on motorcycle patrol at the oceanfront with his partner, Officer Chang. Sometime close to 3:00 a.m., Officer Curtin received a call from dispatch for a "fight call for service" in the 3800 block of Pacific Avenue in the City of Virginia Beach. The suspects were described as "three black males, two with dreadlocks, acting disorderly." The initial dispatch also indicated that the complainant was "a security guard at the country club for the location that we were heading to."[2] As Officer Curtin and his partner arrived at the designated location, dispatch informed them that the suspects were leaving in a SUV headed toward Holly Road. Dispatch relayed the license plate number for the SUV and reported that the vehicle was a gray Mercury Mountaineer.

Officer Curtin proceeded to Holly Road and saw only one gray SUV on the street at that time. He passed the vehicle traveling in the opposite direction and saw two black males in the front seats with dreadlocks. Officer Curtin made a U-turn and stopped the SUV in the 3300 block of Holly Road, approximately five blocks from the country club. The SUV bore the same tags reported by the dispatcher. Appellant was identified as the driver of the SUV and was arrested for driving under the influence of alcohol. A search incident to arrest revealed thirteen baggies of crack cocaine. After the traffic stop, Officer Chang returned to the country club and spoke with the security guard who had reported the incident to the police.

In denying the motion to suppress, the trial court concluded:

> Based on the evidence that I heard, I'm finding that this was not an anonymous tipster . . . it was a security guard at a country club. I can infer from the facts given by the officer that the country club was known because he was on his way there to the country club . . . and the basis of knowledge for the tipster at this point – which I don't think was anonymous and was reliable because he was putting himself on the line by making this call – but the basis of his

---

[2] Neither the security guard nor the country club were identified by name in the dispatch.

knowledge was he observed the behavior that gave rise to the stop . . . .

The trial court found appellant guilty of the charges against him. This appeal follows.

ANALYSIS

"At the initial hearing on a motion to suppress, the Commonwealth "carries the burden of showing that a warrantless search and seizure was constitutionally permissible."" Cole v. Commonwealth, 294 Va. 342, 354 (2017) (quoting Jackson v. Commonwealth, 267 Va. 666, 673 (2004)). "On appeal of a ruling on a motion to suppress evidence, the appellant has the burden to demonstrate that, in context of viewing the evidence in the light most favorable to the Commonwealth, the trial court's ruling was reversible error." Giles v. Commonwealth, 32 Va. App. 519, 522 (2000).

Appellant contends that the trial court erred in not granting his motion to suppress because the police had no reasonable suspicion to stop his vehicle. He asserts that the "tip" was from an anonymous individual without indicia of reliability because the caller did not identify himself by name nor did he indicate the name of the country club.[3] The trial court found, however, that the tipster was not anonymous, and the Attorney General contends the security guard was a "citizen informer." Our first inquiry then is whether the "security guard" at the country club was an "anonymous tipster." If he was not, appellant's argument fails because his entire argument before this Court is that the guard was an "anonymous tipster."

"[A] defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo" on appeal. Cole, 294 Va. at 354 (quoting Cost v. Commonwealth, 275 Va. 246, 250 (2008)). "[W]e give deference to the factual findings of the circuit court, but we independently determine whether the manner in

---

[3] At oral argument, appellant conceded that if the informant had given this information, reasonable suspicion would have been established.

which the evidence was obtained meets the requirements of the Fourth Amendment." Id. The trial court made factual findings that the 911 caller was a security guard at a local country club and had observed the behavior he reported. The court also determined that the police officers knew the country club located at the address given in the dispatch. We give deference to those findings but review *de novo* the trial court's legal conclusion that the 911 caller was not anonymous.

"The Fourth Amendment protects the privacy and security of individuals against arbitrary searches and seizures by government officials. Although limited in purpose and length of detention, an investigative traffic stop constitutes a seizure within the meaning of the Fourth Amendment." Harris v. Commonwealth, 276 Va. 689, 694 (2008) (citations omitted). An investigative stop requires a reasonable suspicion, based upon specific and articulable facts, that criminal activity is "afoot." Id.

> [T]he facts and circumstances on which the officer relies must have been available to him at the moment of the stop, not discovered thereafter. The Fourth Amendment imposes a standard of objective reasonableness. The test is not what the officer thought, but rather whether the facts and circumstances apparent to him at the time of the stop were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law was occurring or was about to occur.

Mason v. Commonwealth, 291 Va. 362, 368 (2016) (citations omitted). Further, under the "fruit of the poisonous tree" doctrine, evidence seized as a result of an illegal stop may not be admitted against a defendant at trial. Harris, 276 Va. at 694 (quoting Jackson, 267 Va. at 672); see Wong Sun v. United States, 371 U.S. 471, 488 (1963).

We first distinguish an anonymous tipster from a citizen informant.[4] The former is neither named nor identified. See Black's Law Dictionary (11th ed. 2019) (defining

---

[4] We do not discuss the requirements for paid police informants because that category of informants is not before us.

"anonymous").  The latter is "[a] witness who, without, expecting payment and with the public good in mind, comes forward and volunteers information to the police or other authorities."  See id. (defining "citizen informant").  Each category of informant requires different levels of "veracity" and "reliability."

"Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'"  Harris, 276 Va. at 694 (quoting Florida v. J.L., 529 U.S. 266, 270 (2000)).  "When the factual basis for probable cause or reasonable suspicion is provided by an anonymous informant, the informant's veracity or reliability, and the basis of his or her knowledge are 'highly relevant' factors in the overall totality of the circumstances analysis."  Id. (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)).  An anonymous tip is deemed less reliable and thus requires "more information to sufficiently corroborate the information contained in the tip."  Id. at 695.

"Public-spirited citizens should be encouraged to furnish to the police information of crimes."  Guzewiez v. Commonwealth, 212 Va. 730, 735 (1972).  We do not apply the same standard of reliability to "citizen informers," whether they are named or unnamed, as we apply "when police act on tips from professional informers or those who seek immunity for themselves."  Id.; see Reed v. Commonwealth, 36 Va. App. 260, 267-68 (2001) (stating that "police properly may give more weight to" information provided by "a disinterested citizen" who has witnessed criminal activity than they would give to a tip from a "'criminal' informer, whose motives are less likely to be pure").

> A citizen-informant's veracity may be established by the absence of an apparent motive to falsify or independent police corroboration of the details provided by the informant.  Where a citizen-informant reports a crime committed in his presence, but in which he was not involved, or one in which he was a victim, police officers may act upon such a report if the reliability of the report is

enhanced by a police interview with the victim or other collaborating information.

Corey v. Commonwealth, 8 Va. App. 281, 287 (1989).

Accordingly, "[w]hether reasonable suspicion exists depends on the 'totality of the circumstances,' which includes 'the content of information possessed by police and its degree of reliability, i.e. 'quantity and quality.'" Jackson, 267 Va. at 673 (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). "To provide reasonable suspicion, either the informant or the information given must exhibit 'sufficient indicia of reliability.'" Giles, 32 Va. App. at 523 (quoting White, 496 U.S. at 327). "The circumstances surrounding the tip must be considered to determine whether the tip was reliable." Id.

Here, the police received a dispatch for a "fight call for service," directing the police to the 3800 block of Pacific Avenue in Virginia Beach. The informant was a security guard at the country club "for the location that [the officers] were headed to." The suspects were described as "three black males, two with dreadlocks, acting disorderly."[5] Upon arriving at the country club, an updated dispatch indicated the suspects were leaving in a SUV headed toward Holly Road. Dispatch also relayed to the officers the SUV's license plates and that the vehicle was a gray Mercury Mountaineer. By providing additional information, the informant indicated that he was observing the activity in real time, thus "lend[ing] significant support to the tip's reliability." Bland v. Commonwealth, 66 Va. App. 405, 416 (2012) (quoting Navarette v. California, 572 U.S. 393, 399 (2014)); see also Harris, 276 Va. at 700 (Kinser, J., dissenting) (stating that the informant "indicate[d] that [he] personally observed the vehicle" by giving its "exact location and direction . . . at any moment"). Incidents reported contemporaneously have "long been

---

[5] Disorderly conduct is a Class 1 misdemeanor under Code § 18.2-415.

treated as especially reliable." Navarette, 572 U.S. at 399. The information was not less reliable simply because the officers did not speak face-to-face with the guard.

Based on the SUV's reported direction of travel, Officer Curtin proceeded to 35th Street and Holly Road. He saw a gray Mercury SUV, occupied by two black males with dreadlocks. His observations corroborated the informant's information. Because Curtin could verify the reported descriptions, he had reason to believe the other information regarding the disorderly conduct also was accurate. See White, 496 U.S. at 331-32; Gates, 462 U.S. at 244. Thus, he had reasonable suspicion to stop the vehicle. See Navarette, 572 U.S. at 404 (holding that a 911 call from eyewitness reporting a specific act of reckless driving contained several indicia of reliability and gave police officers reasonable suspicion to stop the vehicle); Bland, 66 Va. App. at 417 (holding that the police officers' observations combined with a "reliable eyewitness account of a readily observable crime" and "a precise eyewitness description" of defendant "provided the requisite suspicion" to stop defendant).

Appellant places great emphasis on the Supreme Court of Virginia's decision in Jackson in which the Court found no reasonable suspicion for the traffic stop. See Jackson, 267 Va. at 681. Yet, Jackson is distinguishable on its facts. There, the analysis focused on an anonymous tip, not one of a citizen informant. See id. at 672, 679. In response to a dispatch from an anonymous caller that three black males in a Honda were disorderly and one was brandishing a firearm, the police stopped a Honda that was occupied by three black males. See id. at 670. The Supreme Court found that the anonymous tip had no indicia of reliability because the informant had given no information as to his identity or the source of his knowledge and "was not subjecting himself or herself to possible arrest if the information provided to the dispatcher

proved false."[6] Id. at 677. Thus, "the informant was not placing his or her credibility at risk and could 'lie with impunity.'" Id. (quoting J.L., 529 U.S. at 275 (Kennedy, J., concurring)).

Here, to the contrary, the citizen informant identified himself, not by name, but by his position as a security guard at an identified country club. He was not "an unknown, unaccountable informant who neither explained how he knew about the [incident] nor supplied any basis for believing he had inside information." United States v. Kehoe, 893 F.3d 232, 238 (4th Cir. 2018) (quoting J.L., 529 U.S. at 271), cert. denied, 139 S. Ct. 842 (2019). The fact that the security guard did not give his name does not detract from his reliability. The police knew where to reach him and did so after appellant's arrest.

The trial judge, in denying the motion to suppress, found that the tip was not anonymous. The trial court may make reasonable inferences from proven facts. See, e.g., Brown v. Commonwealth, 68 Va. App. 746, 788 (2018). The judge concluded that the officers knew the specific country club because they were headed there and that the 911 caller was a security guard there. It is reasonable to infer that a security guard stationed at a country club is there to protect the safety of its members and guests and to prevent any criminal activity. Therefore, the judge reasonably inferred that the security guard was performing those functions when he saw the incident and reported the disorderly conduct to the dispatcher. The judge thus ascertained the basis of the informant's knowledge and determined he was reliable "because he was putting himself on the line by making this call." The guard accurately described the perpetrators, the vehicle they were driving, the license plate number, and the direction the SUV was traveling. The officers immediately corroborated the information when they saw two men with dreadlocks in a gray SUV on a nearby street.

---

[6] Code § 18.2-461 makes it a Class 1 misdemeanor to knowingly give a false report of criminal activity to a law enforcement officer.

We conclude that the evidence supported the trial court's conclusion that the informant was not an anonymous tipster.  See Kehoe, 893 F.3d at 238-39 (finding that a person who called 911 to report an intoxicated person with a firearm at a bar was not anonymous because he provided his first name and phone number to the police, and noting that "courts generally presume that a citizen-informant . . . who discloses his or her identity and basis of knowledge to the police is both reliable and credible").

CONCLUSION

The trial court did not err in denying appellant's motion to suppress.  The totality of the circumstances established that the 911 caller was not an anonymous informant but, instead, was a citizen informant, a security guard at a known country club who reported criminal activity he had observed there.  His reliability was evidenced by his being accountable to the police if his report was erroneous.  We affirm the trial court.

Affirmed.