COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Humphreys and Powell
Argued at Richmond, Virginia


RODNEY WENDELL JONES

                                                    OPINION BY
v.      Record No. 0247-08-1        JUDGE ROBERT J. HUMPHREYS
                                                    DECEMBER 23, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Junius P. Fulton, III, Judge[1]

J. Barry McCracken for appellant.

Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Rodney Wendell Jones ("Jones") appeals his convictions for possession of a firearm by a

convicted felon in violation of Code § 18.2-308.2 and misdemeanor possession of a concealed

weapon in violation of Code § 18.2-308. On appeal, Jones contends that (1) the evidence seized

from his person was inadmissible at trial because it was obtained pursuant to an impermissible

stop and frisk, in violation of the Fourth Amendment and (2) even if admissible, the evidence

was not sufficient to maintain his convictions because the Commonwealth failed to establish that

the item seized from his person was a firearm within the meaning of Code §§ 18.2-308 and

18.2-308.2. We agree with Jones' first contention and reverse the convictions.

## I. Background

"On appeal from a trial court's denial of a motion to suppress, we must review the

evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all

_____

[1] Although Judge Fulton presided over the trial and sentencing of Jones, Judge Jerome
James presided over the hearing on the motion to suppress.

reasonable inferences fairly deducible from it." Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002) (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)). So viewed, the evidence at trial proved as follows.

On May 17, 2005 at approximately 10:30 a.m., Officer Michael Cranford ("the officer") was on bike patrol in a "very high crime area" of the City of Norfolk. While on patrol, the officer observed Jones, along with two other men, standing on a grassy area near the sidewalk. He and two fellow patrolmen approached the group. As he approached, the officer did not observe any member of the group engaged in criminal activity, including Jones.

Upon seeing the officers, Jones' "demeanor changed completely." Immediately, Jones began to walk away from the officers, heading "briskly" towards a nearby townhouse.[2] As he walked, Jones "began to clutch his right side with his right hand." The officer asked Jones to stop. However, Jones ignored the officer's request and continued toward the front door of the townhouse. Before reaching the door, the officer "took control of [Jones'] arm and told him to put his hands up on his back." The officer then conducted a pat down of Jones, which revealed a .45-caliber pistol concealed in his waistband. The officer ran Jones' information and discovered that he had previous felony convictions. Thereafter, the officer placed Jones under arrest.

Prior to trial, Jones made a motion to suppress all evidence seized from his encounter with the police. Jones argued that, because the officer was without a reasonable, articulable suspicion to believe Jones was engaged in criminal activity, he conducted an impermissible stop and frisk, in violation of the Fourth Amendment. The judge denied Jones' motion, finding that the officer had reasonable suspicion based upon two factors: Jones' unprovoked "flight" and the

---

[2] The officer testified that when he first observed Jones he was standing approximately fifteen feet from the townhouse in question.

fact that the encounter occurred in a high crime area. Jones was found guilty of both offenses, and this appeal followed.

## II. Analysis

When reviewing a trial court's denial of a motion to suppress, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). The burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error. McCain v. Commonwealth, 261 Va. 483, 489-90, 545 S.E.2d 541, 545 (2001) (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search'" involve questions of both law and fact and are reviewed *de novo* on appeal. McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (quoting Ornelas, 517 U.S. at 691).

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. However, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Though less than probable cause, "the officer's suspicion must be based on more than just a guess or a hunch." Smith v. Commonwealth, 12 Va. App. 1100, 1102-03, 407 S.E.2d 49, 51 (1991) (citing Moss v. Commonwealth, 7 Va. App. 305, 308, 373 S.E.2d 170, 172 (1988)). Our

sole task on appeal is to determine whether Jones' seizure was supported by reasonable suspicion.

In determining if there is sufficient cause to justify an investigatory stop and subsequent frisk, we must look to the totality of the circumstances. Id. at 1103, 407 S.E.2d at 51 (citing United States v. Cortez, 449 U.S. 411, 417 (1981)).

> The circumstances we may consider include "the 'characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an *obvious* attempt to avoid officers or any nervous conduct on the discovery of their presence."

Id. at 1103, 407 S.E.2d at 51-52 (quoting Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987)) (emphasis added). In this analysis, we use "objective standards rather than . . . the police officer's subjective intent." Goodwin v. Commonwealth, 11 Va. App. 363, 366, 398 S.E.2d 690, 692 (1990) (citing Iglesias v. Commonwealth, 7 Va. App. 93, 101, 372 S.E.2d 170, 174-75 (1988) (*en banc*)). Jones argues that the totality of the circumstances surrounding his stop did not objectively indicate a "reasonable, articulable suspicion that criminal activity [was] afoot." Terry, 392 U.S. at 30. We agree.

The facts of this case have notable similarities to a number of our prior cases. In each instance, we concluded that the totality of the circumstances surrounding the stop at issue did not support a finding of reasonable suspicion. In Goodwin, Goodwin's "jamm[ing] his hand in his coat pocket" upon seeing the police car did not rise to the level of reasonable suspicion, even in a high crime area. Goodwin, 11 Va. App. at 366, 398 S.E.2d at 691. Writing for the majority, Chief Judge Koontz explained, "[w]hile the police are regularly required to rely on their experience and instincts, the fourth amendment requires, at a minimum, that they possess *articulable facts* giving rise to reasonable suspicion of criminal activity before depriving a

citizen of his or her privacy or freedom of movement." Id. at 367, 398 S.E.2d at 692 (emphasis added).

Similarly, in Smith, an officer in a marked police car observed Smith on a playground that "had a reputation for being a place where drugs were prevalent." Smith, 12 Va. App. at 1102, 407 S.E.2d at 51. When he saw the police car, Smith "suddenly move[d] and [stuck] something in the front of his sweatpants." Id. The officer subsequently detained Smith and conducted a search, which revealed a container of drugs. Id. We held that the officer's observations were not sufficient to justify the investigatory stop. Id. at 1104, 407 S.E.2d at 51.

Again, in Riley v. Commonwealth, 13 Va. App. 494, 495, 412 S.E.2d 724, 725 (1992), an officer saw Riley get out of his car, turn his back, and "[make] a motion to his waistband." Though the officer never saw an object of any kind, he believed Riley "had a weapon which he was attempting to hide." Id. Based on these observations alone, the officer stopped Riley and conducted a pat-down search. Id. at 496, 412 S.E.2d at 725. We held that the officer's observations did not give him "particularized knowledge of Riley's involvement in any criminal activity." Id. at 499, 412 S.E.2d at 727. Thus, we held that "the circumstances upon which this stop was predicated . . . were insufficient to justify an investigatory stop." Id.

As in each of the preceding cases, the officer in the instant case lacked facts "giving rise to reasonable suspicion" to believe Jones was engaged in criminal activity. Goodwin, 11 Va. App. at 367, 398 S.E.2d at 692. Albeit in a "high crime area," the encounter between Jones and the officer occurred at approximately 10:30 in the morning. The officer testified that as he approached, he did not observe Jones, or anyone else in the group, engaged in criminal activity. Upon seeing the officers, Jones simply turned and walked fifteen feet to a townhouse. Though Jones clutched his right side as he walked, the officer did not see an object of any kind.

Citing Wardlow, the Commonwealth argues that because Jones was in a "high crime area" and "fled the scene as the police officer approached," his seizure was supported by reasonable suspicion. However, mere presence in a "high crime area" is insufficient as a matter of law to provide reasonable suspicion for an investigative stop under Terry. Furthermore, Jones' "brisk" walk some fifteen feet to a nearby townhouse did not constitute "headlong flight" from the scene. In Wardlow, a group of officers descended on an area known for its drug activity in order to investigate suspected narcotic transactions. 528 U.S. at 121. The officers expected to find "a crowd of people in the area, including lookouts and customers." Id. When they arrived, the officers observed Wardlow standing next to a building "holding an opaque bag." Id. at 122. Immediately upon seeing the officers, Wardlow turned and ran "through the gangway and an alley . . . ." Id. Finding that the stop was supported by reasonable suspicion, the Supreme Court held that "[h]eadlong flight – wherever it occurs – is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Id. at 124.

The facts of the instant case can hardly be equated to those of Wardlow. Unlike the facts in Wardlow, the officers in the instant case were on a routine patrol, not targeting participants in a drug transaction at a specific location where drug transactions were known to frequently occur. Furthermore, Jones carried no item, such as the opaque bag in Wardlow, which together with the other circumstances, would objectively indicate his involvement in criminal activity. Jones' "brisk" walk of some fifteen feet to a nearby townhouse upon seeing the officers can hardly be equated to the "headlong flight" of Wardlow. The Commonwealth also points to Jones' "[n]ervous, evasive behavior" to support its contention that the seizure was supported by reasonable suspicion. Specifically, that Jones refused to heed the officer's requests to stop. However, citizens who are not under arrest or otherwise detained have every right to refuse or

ignore requests from law enforcement officers. "[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business." Id. at 125 (citing Florida v. Royer, 460 U.S. 491 (1983)). Moreover, a "'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.'" Id. (quoting Florida v. Bostick, 501 U.S. 429, 437 (1991)). That was precisely what occurred here. Under these circumstances, Jones' failure to obey the officer's instructions cannot serve as the justification for his seizure.

Simply put, Jones' actions were not on par with those of Wardlow in providing reasonable suspicion to police that criminal activity "[was] afoot."

Because we hold that the trial court should have suppressed the handgun unlawfully seized from Jones' person, we need not and, thus, do not address the issue of whether the Commonwealth established that the handgun was a firearm within the meaning of Code §§ 18.2-308 and 18.2-308.2. "'[T]he courts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative.'" Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) (quoting City of Fairfax v. Shanklin, 205 Va. 227, 229-30, 135 S.E.2d 773, 775-76 (1964)).

### III.  Conclusion

Even when viewed in the light most favorable to the Commonwealth, the evidence shows that Jones' seizure was clearly "based more on an 'inchoate and unparticularized suspicion or hunch,' than on a reasonable suspicion based on objective facts." Moss, 7 Va. App. at 308, 373 S.E.2d at 172 (quoting Terry, 392 U.S. at 27). Because the officer lacked adequate grounds to stop Jones, we hold that the trial court erred in denying Jones' motion to suppress. Therefore, we

reverse the decision of the trial court and remand for a new trial, if the Commonwealth be so advised.

Reversed and remanded.