COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, McClahanan and Petty
Argued at Richmond, Virginia


MARCUS K. POTTS

MEMORANDUM OPINION[*] BY

v.      Record No. 2005-08-1      JUDGE ROBERT P. FRANK
                                  DECEMBER 15, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

Joseph A. Sadighian, Senior Assistant Appellate Defender (Office of
the Appellate Defender, on briefs), for appellant.

Benjamin H. Katz, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee.

Marcus K. Potts, appellant, was convicted, in a bench trial, of possession of heroin with

the intent to distribute, in violation of Code § 18.2-248.  On appeal, he contends the trial court

erred in denying his motion to suppress.  He argues the trial court found that:  (1) the police had

reasonable suspicion to detain appellant based on his flight in a high crime area; (2) appellant

had no standing to challenge his seizure when the police entered a third party's residence; and

(3) the police did not violate appellant's Fourth Amendment rights by following him into a

private residence.  For the reasons stated, we reverse and remand.

BACKGROUND

On August 1, 2007, Officer T.A. Thursby of the Portsmouth Police Department was one

of several police officers patrolling the Portside Manor Apartments, "an extremely high crime,

high narcotic sales area."  Thursby testified that his police unit had previously made "hundreds

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

of drug arrests" at that location and that he had personally made "numerous arrests" "involving narcotics [and] firearms violations" there.

At approximately 9:00 p.m. on that date, Thursby and other officers drove into the apartment complex in unmarked vehicles, displaying their badges around their necks and wearing "duty belts." As the officers pulled into the complex, Thursby saw appellant from a distance of about fifty feet. Although the sun had already set at the time of the encounter, the area was illuminated with artificial lighting.

Appellant "immediately took off" running toward the interior courts of the apartment buildings. Thursby exited his car and chased after appellant, observing him enter the back door of a particular apartment. Thursby followed appellant as other officers waited at the apartment's front door.

Officer Thursby testified that he believed appellant committed a crime because "[h]e just took off running." The officer opined appellant ran for a reason and "could have a firearm[,]" although the officer never saw a firearm. Thursby admitted he saw no suspicious activity other than the running.

After Thursby knocked on the back door for a few seconds, D.C., who later identified herself as the leaseholder of the apartment, answered the door. Thursby was then able to look into the apartment and observe appellant emerge from the living room. Thursby, believing that appellant posed a danger to his safety, entered D.C.'s apartment and placed appellant in handcuffs. Thursby had no permission to enter. Appellant admitted to Thursby that he resided at 3789 Augustine Circle. D.C. then consented[1] to a search of her apartment, after Thursby had already entered the apartment.

---

[1] The validity of D.C.'s consent is not before us.

Subsequent to D.C.'s consent, another officer searched the apartment's kitchen and recovered heroin. Appellant acknowledged that the drugs belonged to him and later admitted that he intended to sell the drugs.

D.C. testified she was unaware appellant entered her apartment, speculating her cousin "probably let him in." She did not see appellant until the police entered her home. She also testified while appellant was not on her lease, he did live in the apartment. When advised appellant gave a different address as his residence, D.C. indicated the Augustine Circle address was appellant's mother's address.

In support of his motion to suppress, appellant argued to the trial court that appellant's flight in a high crime area does not provide reason to believe criminal activity is afoot. Without reasonable suspicion, appellant contended, police were not permitted to seize appellant inside the apartment. The Commonwealth's attorney responded that headlong flight in a high crime area does provide reasonable suspicion for a seizure to enable the police to "figure out what's going on."

The trial court ruled that as soon as D.C. consented to the search, there was a lawful seizure of the capsules containing heroin. Further, the trial court found, apparently based on appellant's flight, "that [appellant] engaged in conduct what I think would at least be suspicious," thus concluding that the police had reasonable suspicion to seize appellant inside the house.

This appeal follows.

ANALYSIS

Seizure of Appellant

Appellant contends the officers violated his Fourth Amendment rights by seizing him without any reasonable articulable suspicion that he was engaged in criminal activity.

When reviewing a trial court's denial of a motion to suppress, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)).  The burden is on the appellant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error.  McCain v. Commonwealth, 261 Va. 483, 489-90, 545 S.E.2d 541, 545 (2001).  "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search'" involve questions of both law and fact and are reviewed *de novo* on appeal.  McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (quoting Ornelas, 517 U.S. at 691).

Whether the Fourth Amendment has been violated is a question to be determined from all the circumstances.  McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 516 (2008).  Review of the existence of probable cause or reasonable suspicion involves application of an objective rather than a subjective standard.  Terry v. Ohio, 392 U.S. 1, 21-22 (1968).

Under well-settled principles of law, police officers may stop a person for the purpose of investigating possible criminal behavior even though no probable cause exists for an arrest.  Id. at 22.  A stop is permissible so long as the officer has reasonable, articulable suspicion that criminal activity may be afoot.  United States v. Sokolow, 490 U.S. 1, 7 (1989).  To establish reasonable suspicion, an officer must be able to articulate more than an unparticularized suspicion or "hunch" that criminal activity is afoot.  Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000).  The character of the location and the time at which a person is observed are relevant factors, but they do not supply a particularized and objective basis for suspecting criminal activity on the part of the particular person stopped.  Brown v. Texas, 443 U.S. 47, 51-52 (1979).

"It is well established that whether reasonable suspicion 'exists to warrant an investigatory stop is determined by the totality of the circumstances.'" Gregory v. Commonwealth, 22 Va. App. 100, 107, 468 S.E.2d 117, 121 (1996) (quoting Smith v. Commonwealth, 12 Va. App. 1100, 1103, 407 S.E.2d 49, 51 (1991)). Some of the circumstances this Court has considered include "an obvious attempt to avoid officers," Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987), the "defendant's presence in a high crime area," Brown v. Commonwealth, 15 Va. App. 232, 235 n.1, 421 S.E.2d 911, 912 n.1 (1992), and any "furtive movements and suspicious conduct" of the accused, Purdie v. Commonwealth, 36 Va. App. 178, 186, 549 S.E.2d 33, 37 (2001).

In Wardlow, the Supreme Court noted that the characteristics of the area and the defendant's conduct, including his unprovoked flight, justified the stop and further investigation. In that case, a group of officers arrived in an area known for its drug activity in order to investigate suspected narcotic transactions. 528 U.S. at 121. The officers expected to find "a crowd of people in the area, including lookouts and customers." Id. When they arrived, the officers observed Wardlow standing next to a building "holding an opaque bag." Id. at 122. Immediately upon seeing the officers, Wardlow turned and ran "through the gangway and an alley . . . ." Id. Finding that the stop was supported by reasonable suspicion, the Supreme Court held that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight — wherever it occurs — is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Id. at 124. The Court also observed that it was "not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight *upon noticing the police*." Id. (emphasis added).

- 5 -

Unlike the facts in Wardlow, the officers in this case were on a routine patrol, not targeting participants in a drug transaction at a specific location where drug transactions were known to frequently occur. Furthermore, appellant carried no item, such as the opaque bag in Wardlow, which together with the other circumstances, would objectively indicate his involvement in criminal activity. Most importantly, this record does not establish that appellant realized the occupants of the unmarked cars were police officers. Although the officers wore badges and "duty belts," they were seated in unmarked vehicles at a distance of fifty feet from appellant.[2]

The Commonwealth attempts to distinguish the facts here from those presented in Jones v. Commonwealth, 53 Va. App. 171, 670 S.E.2d 31 (2008). There, police were on routine patrol in a "very high crime" area in Norfolk. Id. at 175, 670 S.E.2d at 33. The officers observed Jones and others standing on a grassy area near the sidewalk. Id. One officer approached the men, but did not observe anyone engaging in criminal activity. Id. Jones' demeanor changed, and he began to walk "briskly" towards a townhouse. Id. The officer stopped him and recovered contraband. Id. This Court concluded that the totality of the circumstances surrounding the stop did not support a finding of reasonable suspicion. Id. at 180, 670 S.E.2d at 35. We underscored that "mere presence in a 'high crime area' is insufficient as a matter of law to provide reasonable suspicion for an investigative stop under Terry." Id. at 179, 670 S.E.2d at 35. We find no meaningful distinction between the facts of Jones and the facts in the record before us.

In Whitfield v. Commonwealth, 265 Va. 358, 576 S.E.2d 463 (2003), the Supreme Court found officers did not violate appellant's Fourth Amendment rights when they apprehended him after he took flight. There, a police officer observed Whitfield in the early morning hours

_____

[2] When asked if the sun had set when he first saw appellant, Officer Thursby responded "Absolutely." He also noted that there was "artificial lighting" in the vicinity.

apparently trespassing on private property in an area "notorious for crime problems." Id. at 362, 576 S.E.2d at 465. When the officer aimed the spotlight of his marked police vehicle toward defendant, Whitfield ran. Id. When he could not escape over a high fence, he was detained. Id. Citing Wardlow, the Supreme Court of Virginia held that "[t]he characteristics of the area and the defendant's conduct, including his unprovoked flight, justified the stop, and further investigation." Id.

Whitfield is clearly distinguishable from this case on its facts, as Whitfield was suspected of trespassing on private property at 3:30 a.m. Clearly the suspicion of trespassing, coupled with the time of night and the high crime area, supplied the necessary elements for the police in that case to properly detain Whitfield.

Thursby did not testify that he witnessed any criminal activity, that appellant recognized him as a police officer, or that appellant ever saw the police vehicle. There is no testimony in the record before us that appellant looked in the direction of the vehicle, nor is there evidence that the officers' badges and "duty belts" were visible to appellant. Appellant merely happened to be at the scene and fled. Based on the record before us, Thursby did not possess specific and articulable facts sufficient to support an inference of criminal activity to provide him with reasonable suspicion to seize appellant.

Under the facts of this record, we decline to find that appellant was properly detained based solely upon evidence that he was seen running in a high crime area. Indeed, "[a] person's Fourth Amendment rights are not lessened simply because he or she happens to live or travel in a 'high crime' area." McCain, 275 Va. at 553, 659 S.E.2d at 516.

We find that appellant was detained in violation of his Fourth Amendment rights. To that end, we hold that the statements regarding the heroin found in the apartment were not admissible

at trial.[3] <u>Wong Sun v. United States</u>, 371 U.S. 471, 485-88 (1963).  We note that the heroin was found as a result of the search of D.C.'s apartment, with her consent, and not as a result of appellant's illegal detention.  In his brief, appellant does not argue that he has standing to challenge the search of the apartment; he maintains he has standing to challenge his own seizure and the use of his statements at trial.  Therefore, our holding is limited to suppression of appellant's statements.[4]

Because we find that appellant's seizure was unlawful, we need not consider the lawfulness of the officer's entry into the residence.  Therefore, we do not address appellant's remaining questions presented.

CONCLUSION

For the foregoing reasons, we find that the trial court erred in denying appellant's motion to suppress as it applies to his statements.  Accordingly, we reverse the trial court and remand for further proceedings if the Commonwealth be so advised.

<u>Reversed and remanded.</u>

---

[3] The Commonwealth maintains that appellant's argument regarding suppression of any statements made while in D.C.'s apartment is defaulted because appellant never argued suppression of statements to the trial court.  A review of the record indicates that appellant did, in fact, argue to the trial court that his statements should be suppressed.  Initially, appellant asked the trial court to suppress "anything that flow[ed]" from the seizure of appellant, and then objected to Officer Arzolla testifying to any statement appellant made to the officer.  We find appellant preserved this issue for appellate review.  <u>Ohree v. Commonwealth</u>, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); Rule 5A:18.

[4] We do not address whether appellant's statements to police after the Fourth Amendment violation were an "'act of free will unaffected by the initial illegality'" and therefore admissible pursuant to the criteria set forth in <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 107 (1980) (quoting <u>Brown v. Illinois</u>, 422 U.S. 590, 603 (1975)), as this argument was never advanced by the Commonwealth on brief or at oral argument.