COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Beales and Huff
Argued at Richmond, Virginia


XAVIER JAMAL HARGROVE

                                                            MEMORANDUM OPINION[*] BY
v.        Record No. 2632-10-2                      JUDGE WILLIAM G. PETTY
                                                                       JANUARY 31, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Catherine French, Supervising Assistant Public Defender (Office of
the Public Defender, on briefs), for appellant.

Susan M. Harris, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Xavier Jamal Hargrove was convicted of possession of cocaine with intent to distribute, in

violation of Code § 18.2-248, after a police officer discovered cocaine in one of his pockets.  Before

trial, Hargrove moved to suppress the cocaine on the basis that the officer unlawfully seized him in

violation of the Fourth Amendment.  The trial court denied the motion to suppress.  Hargrove

appeals this decision, arguing that the officer seized him without reasonable, articulable suspicion

that he was involved in criminal activity.  For the following reasons, we affirm.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite below only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.  "On appeal, 'we review the evidence in the light most favorable to the

Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

Whether "evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact." Rudolph v. Commonwealth, 277 Va. 209, 210, __ S.E.2d __, __ (2009). Thus, "an appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Robertson v. Commonwealth, 275 Va. 559, 563, 659 S.E.2d 321, 324 (2008).

Assuming without deciding that Hargrove was seized once he denied the police consent to search his gym shorts pockets, we conclude that Hargrove's seizure was lawful because the police had a reasonable, articulable suspicion that he was engaged in criminal activity, i.e., that he was in possession of contraband.[1]

To determine whether a seizure is lawful under the Fourth Amendment, we must first classify the seizure as either an arrest or an investigatory stop. Ewell v. Commonwealth, 254 Va. 214, 216, 491 S.E.2d 721, 722 (1997). If a police officer makes an arrest, the officer must have probable cause that a crime has occurred or is occurring, but when, as in this case, an officer

---

[1] The Commonwealth argues that the encounter remained consensual until the drug dog alert provided the officer with probable cause for a search of the pocket. However, in light of the trial court's ruling that Hargrove was seized when he "blade[d] away," or made furtive motions designed to hide the pocket and its contents, the trial court did not resolve Hargrove's claim that he was told he was not free to leave while awaiting the dog's arrival. Thus, because the trial court did not develop certain facts necessary to evaluate the Commonwealth's argument, we cannot apply a right result, wrong reason analysis and thereby reach the Commonwealth's argument. See Perry v. Commonwealth, 280 Va. 572, 578-82, 701 S.E.2d 431, 435-37 (2010).

conducts an investigatory stop,[2] the officer merely "must have 'a reasonable suspicion, based on objective facts, that the [person] is involved in criminal activity.'" Id. at 217, 491 S.E.2d at 722 (quoting Brown v. Texas, 443 U.S. 47, 51, (1979)). "A reasonable suspicion justifying an investigatory stop is 'something more than an inchoate and unparticularized suspicion or hunch of criminal activity,' but 'something less than probable cause.'" Lawson v. Commonwealth, 55 Va. App. 549, 555, 687 S.E.2d 94, 97 (2010) (quoting Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 598 (2004)). It "requires only 'some minimal level of objective justification' for making such a stop." Branham v. Commonwealth, __ Va. __, __, __ S.E.2d __, __ (Jan. 13, 2012) (quoting I.N.S. v. Delgado, 466 U.S. 210, 217 (1984)). "Whether an officer has a reasonable suspicion to justify such a detention is 'based on an assessment of the totality of the circumstances.'" Id. (quoting Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008)). To that end, a police officer may "'draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person.'" Id. (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

Here, the totality of the circumstances supports the trial court's conclusion that the police officer had a reasonable, articulable suspicion that Hargrove was engaged in criminal activity, and that suspicion permitted the officer to detain Hargrove to further investigate the matter. The police were specifically assigned to patrol the area because of past and current drug dealing and crimes of violence. As they first drove past Hargrove and two other individuals, someone

---

[2] In this Court and in the trial court below, Hargrove has characterized his seizure only as an investigatory stop and has challenged the seizure as unlawful on that basis. Accordingly, we will not consider whether the seizure could have been an arrest subject to higher probable cause scrutiny.

shouted out "5-0."[3] As the trial court noted, the police then initiated a consensual encounter with Hargrove and the two other individuals.[4] One of the officers asked Hargrove whether he had "anything illegal" in his possession, including drugs or weapons, and whether he could search him for these items. Hargrove gave the officer permission not only to pat him down, but also to search inside his pants pockets. When asked to empty his pockets, Hargrove removed the contents of his front pants pocket, but kept the contents in a closed fist, giving the officer the impression he was trying to conceal something. In the course of this search, the officer noticed that Hargrove was also wearing gym shorts containing pockets underneath his pants. Once the officer noticed these gym shorts, he asked Hargrove if he had pockets "inside" his clothing, and Hargrove lied by claiming he did not. The officer then asked for permission to search these "inside" pockets; in response, not only did Hargrove refuse consent, but he also made furtive gestures designed to conceal the contents of his pockets and prevent the officer from continuing what until that point had been a consensual search.

As Hargrove notes, it is true that refusal to consent to a search alone "cannot be used as a basis for *probable cause*," Royal v. Commonwealth, 37 Va. App. 360, 371, 558 S.E.2d 549, 554 (2002) (emphasis added), nor can a "'refusal to cooperate, without more,'" justify a seizure, Jones v. Commonwealth, 53 Va. App. 171, 180, 670 S.E.2d 31, 35 (2008) (quoting Illinois v. Wardlow, 528 U.S. 119, 125 (2000)). Here, however, we are not presented with merely a refusal to consent or a refusal to cooperate. Hargrove did not simply deny a police request to search him

---

[3] As Hargrove's counsel agreed at oral argument, "5-0" is a slang term for police.

[4] Hargrove does not assign error to the trial court's conclusion that his interactions with the police were consensual up until he denied the police consent to search his gym shorts and he "blade[d] away," or made furtive motions designed to hide the pocket and its contents. In fact, Hargrove argues that the trial court was correct when it came to this conclusion. Thus, for purposes of this appeal, we assume that Hargrove engaged in a consensual encounter with the police at least up until that time, if not longer.

- 4 -

for contraband. Instead, he initially *agreed* to both a pat down and a search of his outer clothing for drugs, weapons, and other illegal items. During the course of this consensual search, Hargrove lied about the existence of interior pockets. This was no trivial lie; under the circumstances, the officer could have reasonably concluded that Hargrove lied to hide his possession of an illegal substance. See Weschler v. Commonwealth, 20 Va. App. 162, 172, 455 S.E.2d 744, 748 (1995) (holding that reasonable suspicion existed to seize a suspected drug courier for a brief investigatory stop where the courier lied about having carry-on luggage which officers suspected contained drugs); see also Branham, __ Va. at __, __ S.E.2d at __ (holding that reasonable suspicion existed to search a man found outside a house known for drug activity at 1:00 a.m. who nervously claimed to be lost). Hargrove further solidified this suspicion when he attempted to conceal his interior pockets. Thus, on these facts, we hold that the trial court did not err when it concluded that the officer had reasonable suspicion to detain Hargrove.[5]

Therefore, we affirm the judgment of the trial court.

Affirmed.

---

[5] Indeed, the facts here compare favorably to Terry v. Ohio, 392 U.S. 1 (1968), which first recognized the authority of a police officer to seize a person for a brief investigatory stop based upon reasonable suspicion of criminal activity. In Terry, a police officer noticed two men repeatedly walk past a store on a public street and briefly confer, as if staking out the store for a robbery. Terry, 392 U.S. at 4-6. His suspicions aroused, the officer subsequently stopped the men and searched them for weapons. Id. at 7. The Court in Terry upheld the stop as lawful under the Fourth Amendment because the officer had reasonable suspicion that criminal activity was afoot. Id. at 30-31. Here, Hargrove's behavior is at least as suspicious as the individuals' behavior in Terry, if not more so. Accordingly, the trial court did not err when it concluded that reasonable suspicion existed to stop Hargrove.