COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Petty and McCullough
Argued at Richmond, Virginia


JONATHAN DONELL BURTON

                                                    MEMORANDUM OPINION* BY
v.       Record No. 0013-12-2                       JUDGE WILLIAM G. PETTY
                                                    NOVEMBER 13, 2012
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                            Edward L. Hogshire, Judge

            Lacey R. Parker, Assistant Public Defender (Office of the Public
            Defender, on brief), for appellant.

            Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        Jonathan Donell Burton appeals his conviction for possession of cocaine in violation of

Code § 18.2-250.  Burton argues that the trial court erred in overruling his motion to suppress

evidence found in the course of a search of his person and admitting the evidence at trial.  For the

reasons set forth below, we affirm the judgment of the trial court denying the motion to suppress,

subject to remand solely for correction of a clerical error in the conviction order.[1]

                                              I.

        Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite below only those facts and

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The trial court's conviction order states that Burton entered a conditional plea of guilty.
However, the transcript of the proceedings indicates Burton entered a plea of not guilty and that
the trial court, after incorporating the testimony given at the hearing on the suppression motion
and hearing additional evidence at trial, found Burton guilty based on that evidence.  Therefore,
we will remand the case to the trial court for the sole purpose of correcting the clerical error in
the conviction order.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

II.

Burton contends that the pat-down search of his person, which ultimately uncovered cocaine, violated the Fourth Amendment because Officer D.R. Dean did not have the requisite reasonable suspicion for the pat-down search.[2] We disagree.

In reviewing "a trial court's denial of a motion to suppress, we determine whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." Roberts v. Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009). Further, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). Nevertheless, "we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (en banc).

---

[2] Burton did not argue at trial, or on brief, that the consent he gave to Officer Dean to search his person after the initiation of the pat-down search was invalid. Therefore, we do not address whether Burton's consent to search after the initiation of the pat down was valid. Instead, we focus our analysis only on whether Officer Dean had reasonable, articulable suspicion to seize and search Burton.

- 2 -

The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. A person is entitled to Fourth Amendment protections when he is walking down the street; however, the degree of protection is determined by the type of confrontation between the person and the police officer. Terry v. Ohio, 392 U.S. 1, 9 (1968). "Fourth amendment jurisprudence recognizes three categories of police-citizen confrontations: (1) consensual encounters; (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as Terry stops; and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (citations omitted). This case began as a consensual encounter.[3] It quickly evolved, however, into a non-consensual encounter when Officer Dean seized Burton in order to pat him down.

A police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry, 392 U.S. at 30). "There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop. Instead, the courts must consider the 'totality of the circumstances—the whole picture.'" Hoye v. Commonwealth, 18 Va. App. 132, 135, 442 S.E.2d 404, 406 (1994) (quoting United States v. Sokolow, 490 U.S. 1, 8 (1989)).

> The circumstances we may consider include "the 'characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence."

---

[3] The parties agree that the initial encounter between Officer Dean and Burton was consensual. The disagreement arises as to whether Officer Dean had the requisite reasonable suspicion to conduct a Terry stop.

Jones v. Commonwealth, 53 Va. App. 171, 177, 670 S.E.2d 31, 34 (2008) (quoting Smith v. Commonwealth, 12 Va. App. 1100, 1103, 407 S.E.2d 49, 51-52 (1991)). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 27. These facts and circumstances are viewed "objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer." Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989).

However, reasonable suspicion of criminal activity alone does not warrant a pat down for weapons. Before a police officer conducts a pat-down search subsequent to a Terry stop, he must be able to point to "'specific and articulable facts'" "'which reasonably lead[] him to conclude, in light of his experience, . . . that the [person subject to the search] may be armed and presently dangerous.'" James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (quoting Lansdown v. Commonwealth, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983)).[4]

---

[4] Just as reasonable suspicion of criminal activity—standing alone—will not justify a Terry pat down, neither will reasonable suspicion that an individual is armed—standing alone—provide such justification.

> "If [a] frisk is justified in order to protect [an] officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a forcible stop. Any person, including a policeman, is at liberty to avoid a person he considers dangerous. If and when a policeman has a right instead to disarm such a person for his own protection, he must first have a right not to avoid him but to be in his presence. . . . [T]he right to frisk . . . depends upon the reasonableness of a forcible stop to investigate a suspected crime."

United States v. Burton, 228 F.3d 524, 528 (4th Cir. 2000) (quoting Terry, 392 U.S. at 32-33 (Harlan, J., concurring)); see also United States v. Place, 462 U.S. 696, 703 n.4 (1983) (recognizing that Justice Harlan's concurrence "made [the] logical underpinning of the Court's Fourth Amendment holding in Terry clear"); Adams v. Williams, 407 U.S. 143, 146 (1972) ("So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is

- 4 -

In applying the above principles to this case, we must look at "the totality of the circumstances—the whole picture" of the scene through the eyes of a reasonable officer in Officer Dean's position. The picture was fully developed in this case.

Officer Dean testified that the area in which he encountered Burton was known for both narcotics and weapon violations. Officer Dean first observed Burton standing in the middle of the road, at approximately 11:30 p.m., talking with the driver of a truck. Officer Dean had seen the same truck driving through the neighborhood regularly starting about a month before that particular night, but he had never seen it parked in any residential areas. That night, he saw the truck at least twice in the span of an hour in locations indicating it had circled through the neighborhood. No businesses other than a neighborhood bar were open at that time. Officer Dean intended to stop the truck to issue a traffic citation for stopping in the middle of the roadway with a pedestrian. However, the truck drove away before Officer Dean could turn around.

Nonetheless, Officer Dean pulled to the side of the road, got out of his patrol car, and asked Burton, in a conversational tone of voice, "How's it going?" Burton had been walking in the opposite direction of Officer Dean but turned around and engaged in conversation. Officer Dean asked Burton what was going on that night and explained that the truck had drawn his attention. Officer Dean asked if Burton knew anything about the driver of the truck. Burton replied that the driver of the truck was his cousin and that he "didn't have anything to do with that shit." It was only then that Officer Dean first mentioned the area's problem with drugs and gun violence. During the course of conversation, and in response to further questioning about narcotics violations and gun violence in the area, Officer Dean noted that Burton became

armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.").

- 5 -

agitated, was sweating profusely even though the temperature was in the mid to low 30s, and was cycling through very abrupt extremes of agitation and calm. At trial, Officer Dean testified that Burton "seemed to be very angry, like he was mad that I was talking to him. He was just very loud, very abrupt, language was very forceful. . . . His eyes didn't seem to be reacting to the light of [the] flashlight or the headlights of [the] vehicle." Based on these facts, it would certainly be reasonable for an officer to infer that Burton could have been under the influence of narcotics.

In addition to Burton's anger, mood swings, and profuse sweating, Officer Dean noted that Burton behaved nervously. When Officer Dean asked Burton if he had any weapons, Burton immediately became more agitated. Furthermore, Burton angled his body in such a way that Officer Dean was not able to see the left side of Burton's body. Not only could Officer Dean not see the left side of Burton's body, but Burton also appeared to be grabbing, or checking something on, the left hand pocket of his jacket. At this point, Officer Dean testified that when he looked at Burton's behavior, "It indicated to me that he might have been possibly armed and carrying a weapon without benefit of a holster . . . ."[5]

We conclude that Officer Dean's suspicion that Burton was involved in some type of drug activity and could be armed with a firearm was reasonable in light of all of the circumstances, including Burton's appearance and behavior—especially his emotional reaction to Officer Dean's question as to whether he was armed. These circumstances would certainly cause a trained, experienced police officer in a situation such as this to verify that the individual

---

[5] Under Code § 18.2-308(A), it is a crime to carry a concealed firearm. The evidence indicated that Officer Dean believed Burton was carrying a concealed firearm. Therefore, this reasonable suspicion of criminal activity alone would have justified Officer Dean's pat down of Burton. See Jones v. Commonwealth, 52 Va. App. 548, 560-61, 665 S.E.2d 261, 267 (2008) (holding that reasonable suspicion that a person is carrying a concealed weapon provides reasonable suspicion that criminal activity is afoot); cf. Whitaker v. Commonwealth, 279 Va. 268, 277-78, 687 S.E.2d 733, 738 (2010) (noting that the mere act of carrying of a concealed weapon provides probable cause for an arrest for violating Code § 18.2-308(A)).

he was dealing with was not armed.  Therefore, Officer Dean lawfully acted upon his reasonable, articulable suspicion that Burton was armed and dangerous in performing the pat-down search.

Accordingly, because Officer Dean had a reasonable, articulable suspicion that criminal activity was afoot and that Burton was armed and dangerous, we hold that the seizure and pat-down search did not violate the Fourth Amendment's protection against unreasonable searches and seizures.

III.

For the foregoing reasons, we affirm Burton's conviction and remand solely for correction of the clerical error in the trial court's conviction order.

Affirmed and remanded with instructions.