UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff,[*] Judges Chafin and Decker
Argued at Richmond, Virginia

TYRON GILLIAM

v.       Record No. 0226-14-1                    MEMORANDUM OPINION[**] BY
                                                 CHIEF JUDGE GLEN A. HUFF
COMMONWEALTH OF VIRGINIA                          JANUARY 27, 2015

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Bonnie L. Jones, Judge

F. Daniel Mazzio, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Tyron Gilliam ("appellant") appeals his conviction for attempted breaking and entering,

in violation of Code §§ 18.2-26 and 18.2-91.  Appellant entered a conditional guilty plea in the

Circuit Court for the City of Hampton ("trial court") and was sentenced to ten years'

incarceration with seven years suspended.  On appeal, appellant asserts that the trial court erred

in denying appellant's motion to suppress because the officer lacked reasonable suspicion as

required for an investigative detention and, therefore, any statements made by the defendant

while detained should be suppressed.  For the following reasons, this Court affirms the

appellant's convictions.

---

[*] On January 1, 2015, Judge Huff succeeded Judge Felton as chief judge

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

On January 16, 2013, Officer Neal ("Neal") of the Hampton Police Division responded to a tip of a potential burglary in progress at a residence in Hampton, Virginia. The tip indicated that "two unknown black males" wearing black clothing were "attempting to break into a residence at the corner" of the reported address. As Officer Neal approached the area in her patrol car, she "observed two males wearing [the] clothing which was described" in the tip.

While still in her patrol car, Neal saw one of the men, later identified as appellant, walking across the side yard, coming from the back of the house about 20 feet away from the home. Upon seeing Neal, appellant "[sped] up his walk and look[ed] around as if he was going to flee the area." Additionally, Neal noticed appellant "picked up on his walk" and began "looking and scanning the area with his eyes." Once appellant reached the middle of the driveway, Neal "got out of the car and approached [appellant]." Neal "placed [appellant] in handcuffs" while another officer confirmed that there was damage to the rear door of the home. Neal placed appellant in the patrol car until a detective arrived. During his detention, appellant answered Neal's questions regarding the incident.

At trial, appellant argued that his detention was unlawful and his statements should have been suppressed. Specifically, appellant stated

> our argument would be that the investigative detention was unlawful, and, as a result, any statements made by [appellant] following that are inadmissible, and we're asking the Court to suppress them this

afternoon . . . . The officer got a call that there were two males potentially involved in a crime. Black males wearing dark colored clothing. Not even specific information about who these individuals were . . . . He was on the grass right near the sidewalk which is a public area, Your Honor. It's not unusual to have someone walking in the grass by the sidewalk.

In response, the Commonwealth argued the detention was lawful because the officer corroborated the tip in that appellant was in the same location as the burglary, he matched the physical description, and evidence established "his furtive movements and increasing the speed as he was walking."

After hearing both arguments, the trial court denied appellant's motion to suppress. In support of its ruling, the trial court explained

> I think the [c]ourt is required to look at the totality of the circumstances, and the totality of the circumstances is there was a description given of two black males in dark clothing. We have the officer's description of the alleged perpetrator's body language in which she described as his attempt to flee and furtive movements. We have his location in the yard where she describes as between the driveway and the sidewalk on the grass, which I consider the curtilage, and the information that there was a crime in progress. So, based on the totality of the circumstance and all of these fact situations, I do find that the motion to suppress should be denied.

This appeal followed.

## A. Standard of Review

"When reviewing a trial court's denial of a motion to suppress, 'we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Jones v. Commonwealth, 53 Va. App. 171, 176, 670 S.E.2d 31, 33 (2008) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). "The burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in

the light most favorable to the Commonwealth, was reversible error." Id. (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

An appellant's claim that "he was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." Harris v. Commonwealth, 276 Va. 689, 694, 668 S.E.2d 141, 145 (2008) (emphasis added) (citing Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)). "In making such determination, we give deference to the factual findings of the [trial court], but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Id. (citing Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002)).

## B. Motion to Suppress

On appeal, appellant asserts that the trial court erred in denying appellant's motion to suppress because Neal lacked the reasonable suspicion necessary for an investigative detention and any statements made by appellant while detained should be suppressed. Specifically, appellant contends that Neal did not have reasonable suspicion based on specific and articulable facts and, therefore, the detention was unlawful and unreasonable under the Fourth Amendment. The Commonwealth responds that there was enough cause for an officer to perform an investigatory stop under the totality of the circumstances.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. An officer, however, may "conduct a brief, investigatory stop when the officer has a reasonable, articulable, suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). While the applicable standard is less than

probable cause, "[t]he officer's suspicion must be based on more than just a guess or a hunch." Smith v. Commonwealth, 12 Va. App. 1100, 1102-03, 407 S.E.2d 49, 51 (1998).

"In determining if there is sufficient cause to justify an investigatory stop and subsequent frisk, we must look to the totality of the circumstances." Jones, 53 Va. App. at 177, 670 S.E.2d at 34 (citing United States v. Cortez, 449 U.S. 411, 417 (1981)). Moreover, this Court "must apply objective standards in determining whether the requisite degree of suspicion exists, taking into account that 'trained law enforcement officers may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.'" Castaneda v. Commonwealth, 7 Va. App. 574, 580, 376 S.E.2d 82, 85 (1989) (*en banc*) (quoting United States v. Gooding, 695 F.2d 78, 82 (4th Cir. 1982)). In making its determination, this Court must

> view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer. Based upon that objective assessment courts must determine whether the officer could have entertained an articulable and reasonable suspicion that the defendant was involved in unlawful activity.

Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989) (citing Zimmerman v. Commonwealth, 234 Va. 608, 612, 363 S.E.2d 708, 709 (1988)).

In the current matter, Neal received an anonymous tip that "two unknown black males" wearing black clothing were "attempting to break into a residence at the corner" of 347 Grant Circle. Upon approaching the residence, Neal observed appellant and another individual, who both matched the description. Moreover, Neal indicated that appellant and the other suspect were walking across the side yard from the back of the house where the breaking and entering occurred. A suspect's unauthorized presence on the premises of a suspected burglary provides reasonable suspicion. See Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981).

Furthermore, after driving toward appellant in the patrol car, Neal noticed appellant speed up his walk and look around "as if he was going to flee the area." While appellant never ran, Neal indicated appellant "picked up on his walk" and began "looking and scanning the area with his eyes." See Wardlow, 528 U.S. at 124 ("Headlong flight -- wherever it occurs -- is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.").

Appellant argues that under the totality of the circumstances Neal did not have reasonable suspicion to detain him. In support of his position, appellant relies on Jones, 53 Va. App. at 176, 670 S.E.2d at 33, and Harris, 276 Va. at 694, 668 S.E.2d at 145. Both of those cases, however, are distinguishable from the current matter. In Jones, this Court determined that the officer did not have a reasonable suspicion to detain the defendant after the defendant, who was standing in a high crime area, briskly walked away from the officer to a townhouse. 53 Va. App. at 176, 670 S.E.2d at 33. This Court determined that defendant's unprovoked flight and fact that the encounter occurred in a high crime area did not amount to reasonable suspicion under the circumstances. Id. Additionally, in Harris, the Supreme Court held that an officer did not have reasonable suspicion to pull over a driver of an automobile that matched an anonymous tip for driving under the influence because the officer did not witness any behavior that corroborated the criminal activity alleged in the anonymous tip. 276 Va. at 697-98, 668 S.E.2d at 146-47. Rather, the United States Supreme Court's decisions in Terry, 392 U.S. 1,[1] and Navarette v. California,

_____

[1] In Terry, the United States Supreme Court determined there was reasonable suspicion to stop a defendant after the officer suspected two men to be casing a job or stick-up. 392 U.S. at 5-6. Specifically, the officer observed two men pacing back and forth in front of and glancing into a store. Id. The officer observed the men pace in front of the store for ten to twelve minutes before conducting the stop. Id. at 6.

124 S. Ct. 1683 (2014),[2] support the finding that, in the current matter, Neal possessed reasonable suspicion to stop appellant.

Unlike the previous decisions in Harris and Jones where the officer's finding was only based on an anonymous tip and furtive movements, the trial court in the current matter considered three factors. Specifically, in determining there was reasonable suspicion that criminal activity was afoot, the trial court recognized that Neal took into account appellant's location on the premises of the suspected breaking and entering, appellant's subsequent furtive movements, and that appellant matched the physical description from the tip. Viewing these facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer, Neal possessed articulable and reasonable suspicion that the appellant was involved in unlawful activity. Accordingly, this Court finds that the trial court did not err in denying appellant's motion to suppress.

## III. CONCLUSION

Based on the foregoing, this Court finds that the trial court did not err in denying appellant's motion to suppress.

Affirmed.

---

[2] In Navarette, the United States Supreme Court determined an officer had reasonable suspicion to stop a vehicle under suspicion of drunk driving after the officer received a tip that matched the description of a vehicle that a 911 caller had recently reported as running her off the road. 124 S. Ct. at 1686-87. In reaching its decision, the United States Supreme Court considered the 911 caller's report that she had been run off the road, the short amount of time between the call and the incident, and her usage of the 911 system as indicia of the tip's reliability. Id. at 1689-92.